Valerie J. RANFT and Craig L. Ranft, husband and wife, Sarah Ranft, David Craig Ranft, Emily Ann Ranft and Jane Marie Ranft, their minor children, by the minor's Guardian ad Litem, Patrick O. Dunphy, Plaintiffs-Appellants,†

v.

Thomas P. LYONS, General Casualty Company of Wisconsin and Weait Insurance Corporation, a Wisconsin Corporation, Defendants-Respondents.††

Court of Appeals

*No. 90-2134. Oral argument April 3, 1991.—Decided May 7, 1991.*

(Also reported in 471 N.W.2d 254.)

† Petition to review denied.

†† Petition for cross-petition denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Patrick O. Dunphy* and *Jeffrey R. Munson* of *Cannon & Dunphy, S.C.* of Milwaukee. Oral argument by *Patrick O. Dunphy.*

On behalf of the defendants-respondents, the cause was submitted on the briefs of *L. William Staudenmaier* and *Laura E. Schuett* of *Cook & Franke, S.C.* of Milwaukee. Oral argument by *Laura E. Schuett.*

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. This appeal from a non-final order raises three important issues relating to pretrial discovery in civil actions. The first issue concerns the scope of the physician/patient privilege and its applicability to medical records of a defendant sued for compensatory and punitive damages because of a drunk-driving accident when those records relate to the defendant's use or abuse of alcohol. The trial court held that the physician/patient privilege prevented the Ranfts from having access to the records. We disagree and reverse.

The second issue is related to the first and concerns whether a defendant sued for compensatory and punitive damages because of a drunk-driving accident may be compelled to submit to a physical examination under Rule 804.10, Stats. The trial court declined to order the examination. Here, too, we reverse.

The third issue presented by this appeal is whether a plaintiff who claims disabling injuries is entitled to pretrial discovery of whether or not he or she has been subject to post-accident photographic or video surveillance by the defendant. The trial court determined that post-accident surveillance was protected work-product and was not discoverable prior to trial. We agree and affirm.

## I.

Shortly before midnight on July 19, 1986, Valerie J. Ranft, a pedestrian, was struck by an automobile driven by Thomas P. Lyons as she was crossing a street with her husband. When tested by police later that morning, Lyons, an attorney who had previously represented clients in drunk-driving matters, had a blood-alcohol concentration of .18% of alcohol per 210 liters of breath. He was subsequently convicted of causing injury by the intoxicated use of a motor vehicle in violation of section 346.63(2), Stats. This civil action seeks compensatory and punitive damages on behalf of Ranft, her husband, and their four minor children.[1]

In their answer to the Ranfts' complaint, Lyons and his insurer admitted that Lyons "was negligent in the operation of his automobile shortly before the accident," but asserted that Mr. and Mrs. Ranft were contributorily negligent. Lyons and his insurer also denied liability for punitive damages.

Lyons was deposed. He testified that from approximately noon to five or five-thirty p.m. on the day of the accident he had been at a picnic sponsored by his law firm, and that he drank four ten-ounce cups of beer at the picnic. After leaving the picnic, Lyons went to a tavern where, according to his testimony, he drank "a couple" of bottles of beer before leaving between seven and seven-thirty p.m. Lyons testified that he arrived home between eight and eight-thirty p.m. and drank three more cans of beer before he left between eleven-fifteen and eleven-thirty p.m. As noted, the car he was driving hit Mrs. Ranft shortly before midnight.

---

[1] One of the children turned eighteen after this action was commenced.

Lyons denied feeling any effects of the alcohol he drank the day of the accident, either when he left his house or at the accident shortly thereafter. He also denied showing any signs of alcohol impairment at the accident scene. Although Lyons had represented approximately six persons in drunk-driving cases between 1983 and 1986, he testified at his deposition that he did not recall knowing in July of 1986 whether or not "a blood alcohol level of .10 would have an effect on a person's ability to react."

After the Ranft accident, Lyons, at the direction of his criminal-defense lawyer, went to the Milwaukee Psychiatric Hospital for "an evaluation." The evaluation was done on an outpatient basis and lasted, according to Lyons, "[a] couple of hours." Lyons was not able to recall at his deposition who did the evaluation, but characterized the man as an Hispanic physician.

## II.

A. The Ranfts sought access to the records of Lyons' Milwaukee Psychiatric Hospital evaluation and sought an order compelling Lyons to submit to a physical examination under Rule 804.10, Stats., by "a physician experienced in the examination and treatment of alcoholics" if they thought such an examination was necessary after their review of the medical records—or if their access to the medical records was denied. The Ranfts contended they were entitled to this discovery because, according to the affidavit of the Ranfts' counsel filed with the motion, "Mr. Lyons' testimony denying impairment despite his blood alcohol level of .18 is inconsistent with the established literature," a statement that was supported by learned-treatise materials submitted with their motion. Additionally, the Ranfts repre-

sented to the trial court that they had retained what they described as "an expert toxicologist and chemist" who was prepared to testify that Lyons would have had to consume more alcohol than he admitted in his deposition testimony in order to reach a .18 blood-alcohol level, and that persons who abuse alcohol can be alcohol-impaired even though they do not outwardly appear to be intoxicated.

The trial court denied the Ranfts' motion for disclosure of the evaluation records, holding that they were protected by the physician/patient privilege and Lyons had not "put his physical condition in issue." The trial court also denied the Ranfts' motion for an order under Rule 804.10, Stats., directing Lyons to submit to a medical examination. The trial court pointed out that its decision concerning the examination under Rule 804.10 was "tied together" with the basis for its ruling that the evaluation records should not be produced. The trial court concluded that an examination under Rule 804.10 was not relevant to Lyons' condition at the time of the accident and would breach his physician/patient privilege.[2]

---

[2]The trial court explained its ruling on the Ranfts' request to have Lyons examined pursuant to Rule 804.10, Stats., as follows:

THE COURT: Again, it's tied together and the ruling is the same. I should give my reasoning a little more clarity for the benefit of counsel and the appellate court, but what is in issue is the Defendant's condition at the time of the accident.

It's very possible that he may have made some admissions to a psychiatrist, but again that is what the privilege is—is used to protect, and I won't breach that privilege in this case or I won't allow it to be breached.

So in summation, I guess—once I start summing up I'm going to have to change the whole picture. I've made my ruling.

**B.** Our analysis of the trial court's discovery orders must, as with all discovery disputes, begin with Rule 804.01(2)(a), Stats., which establishes the scope of permissible discovery:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . .. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This is a broad charter, consistent with the underlying purpose of pretrial discovery, which, among other things, is "designed to formulate, define and narrow the issues to be tried." *State ex rel. Dudek v. Circuit Court for Milwaukee County,* 34 Wis. 2d 559, 576, 150 N.W.2d 387, 397 (1967) (discussing discovery practice prior to the adoption of the current rules of civil procedure). A trial court's rulings on discovery are discretionary and will be upheld if they are "consistent with the facts of record and established legal principles." *Lievrouw v. Roth,* 157 Wis. 2d 332, 358–359, 459 N.W.2d 850, 859–860 (Ct. App. 1990).

**1.** In resisting discovery of the Milwaukee Psychiatric Hospital records, Lyons does not argue that the material is not within the expansive scope of Rule 804.01(2), Stats. Rather, he contends that the records are protected by the physician/patient privilege established by Rule 905.04(2), Stats., which provides:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or

disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor or psychologist.

There is no dispute but that the Milwaukee Psychiatric Hospital records are within the ambit of this provision. The Ranfts claim, however, that Lyons has put his physical condition in issue so that the privilege gives way pursuant to Rule 905.04(4)(c), Stats. Rule 905.04(4)(c) provides:

There is no privilege under this section as to communications relevant to or within the scope of discovery examination of an issue of the physical, mental or emotional condition of a patient in any proceedings in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

Whether this rule strips the physician/patient privilege from the Milwaukee Psychiatric Hospital records is a question of law that we determine independently. *See State v. Taylor,* 142 Wis. 2d 36, 39, 417 N.W.2d 192, 193 (Ct. App. 1987).

Lyons' deposition testimony that, despite his .18 blood-alcohol level and his admission of negligence, he neither felt impaired nor exhibited any signs of impairment supports two elements of his defense: 1) his answer's denial of liability for punitive damages by contending that his actions in connection with the accident did not constitute "outrageous, wanton and reckless con-

duct"; and 2) his claim that the Ranfts were contributorily negligent, which—if so—would necessarily require the jury to determine the extent and degree of Lyons' negligence in its answer to the comparative negligence question. *See* sec. 895.045, Stats. As the Ranfts' offers-of-proof submitted in support of their motion to compel discovery of the Milwaukee Psychiatric Hospital records indicate, these assertions of non-impairment by Lyons can be tested by ascertaining both his physiological makeup and his history as either a user or abuser of alcohol. Additionally, Lyons' knowledge about whether or not he was an abuser of alcohol would have a bearing on his liability for punitive damages. *See Lievrouw*, 157 Wis. 2d at 342-343, 345-348, 459 N.W.2d at 853-855. Thus, Lyons has made his physical condition an element of his defense in this action, and the physician/patient privilege does not apply. *See* Rule 905.04(4)(c), Stats.

The trial court's order denying the Ranfts' motion to compel discovery of the Milwaukee Psychiatric Hospital records is reversed. On remand, the trial court should examine the records *in camera* and redact any material that is not within the scope of discovery recognized by Rule 804.01(2), Stats.[3]

2. In denying the Ranfts' motion to compel Lyons to undergo a physical examination under Rule 804.10, Stats., by a physician represented by them to be "experienced in the examination and treatment of alcoholics," the trial court indicated that the examination would violate Lyons' physician/patient privilege and, additionally, concluded that the results of the requested examination

[3] At oral argument, the Ranfts specifically acknowledged that an *in camera* review by the trial court would be appropriate.

would not relate to Lyons' "condition at the time of the accident." Rule 804.10(1) provides, in material part:

> When the . . . physical condition . . . of a party is in issue, the court in which the action is pending may order the party to submit to a physical . . . examination. The order may be made on motion for cause shown . . . and shall specify the . . . conditions and scope of the examination and the person or persons by whom it is to be made.

The rule's requirement that there be "cause shown" for the examination in addition to the threshold condition that the party's physical condition be "in issue" means that there must be some further showing that the examination is necessary. *See Schlagenhauf v. Holder,* 379 U.S. 104, 117–122 (1964) (interpreting the similar provisions of Fed. R. Civ. P. 35(a)).[4] Thus, for example, an

---

[4]Rule 35(a) of the Federal Rules of Civil Procedure interpreted by *Schlagenhauf* provided as follows:

> **Order for examination.** In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The Judicial Council Committee's Note to Rule 804.10 explains: "Section 269.57 [the predecessor to Rule 804.10] permits examination only in actions for personal injuries; this section permits examination whenever mental or physical condition is actually in issue. See Schlagenhauf v. Holder, 85 S. Ct. 234, 379 U.S. 104, 13 L. Ed. 2d 152 (1965)." Judicial Council Committee's Note, 1974, Wis. Stat. Ann. sec. 804.10 (West 1977). The Ranfts suggest that this means that the "good cause" requirement in Rule 804.10(1) adds nothing to the necessity that the party's physical condition be "in issue." We disagree. First, the Judicial Council was merely

examination might not be appropriate if the opposing party could obtain the desired information by other means. *See id.,* 379 U.S. at 118. Although Rule 804.10 grants the trial court discretion as to whether or not an examination is warranted, that discretionary determination must, as we have previously noted, be rationally based on the facts of record and be in accord with established legal principles. The trial court gave, in effect, two reasons for not ordering Lyons' examination: the physician/patient privilege and relevancy. We analyze these reasons in turn.

██ a. The physician/patient privilege protects "confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment," Rule 905.04(2), Stats., and, as we have already seen, the privilege does not apply when the patient "relies upon the condition as an element of his claim or defense," Rule 905.04(4)(c), Stats. Rule 804.10, Stats., however, permits a trial court to order an examination when the party's physical condition is "in issue" irrespective of which party has placed the condition in issue. If a court-ordered examination under Rule 804.10 is necessary, the physician/patient privilege does not apply. Rule 905.04(4)(b), Stats.[5]

---

highlighting the distinction between the old section 269.57, which limited physical examinations to personal-injury actions, and the new Rule 804.10, which did not. Second, *Schlagenhauf* clearly indicated that the "good cause" showing under Fed. R. Civ. P. 35(a) was in addition to the prerequisite that the mental or physical condition of the party whose examination was sought be "in controversy." *Schlagenhauf,* 379 U.S. at 117–122.

[5]Rule 905.04(4)(b), Stats., provides:

> If the judge orders an examination of the physical, mental or emotional condition of the patient, *or* evaluation of the patient for pur-

b. As we have already discussed, the ability of Lyons' body to resist alcohol-induced impairment despite a blood-alcohol concentration of .18 is at the core of his denial of liability for punitive damages and his defense that the Ranfts were contributorily negligent. There is nothing in the appellate record, however, that supports the trial court's conclusion that results of the requested examination would have no bearing on these material aspects of Lyons' physical condition. Rather, based on what the Ranfts have submitted in support of their motion, the opposite appears to be true. At the very least, the requested examination appears from the record to be within the scope of Rule 804.01(2)(a), Stats.

■

The trial court's order denying the Ranfts' motion to compel Lyons to undergo a physical examination under Rule 804.10, Stats., is reversed. On remand, the

poses of guardianship, protective services or protective placement, communications made and treatment records reviewed in the course thereof are not privileged under this section with respect to the particular purpose for which the examination is ordered unless the judge orders otherwise.

(Emphasis added.) If the emphasized word "or" was not given its plain meaning as a disjunctive, and the exception under Rule 905.04(4)(b) were construed to apply only to those "examination[s] of the physical, mental or emotional condition of the patient" that were ordered by the court "for purposes of guardianship, protective services or protective placement," most examinations under Rule 804.10, Stats., would be useless exercises because under that construction the party who was examined could prevent disclosure of the examination results. We reject such a construction because it would not only be contrary to the clear language of Rule 905.04(4)(b), but would also lead to an absurd result. *See In re C.G.,* 154 Wis. 2d 298, 303, 453 N.W.2d 494, 496 (Ct. App. 1990) (statute should be construed to avoid unreasonable or absurd results).

trial court should re-evaluate the Ranfts' request for an order under that rule in light of what is revealed by the Milwaukee Psychiatric Hospital records and any other material presented by the parties. It should also limit the scope of any examination in a manner that is consistent with this opinion, and should set conditions that may be appropriate to protect Lyons' legitimate interests. *See* Rule 804.01(3), Stats. ("[T]he court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.").

3. The Ranfts' interrogatories to the defendants inquired whether the Ranfts were subject to post-accident photographic or video surveillance.[6] Additionally, the interrogatories sought the following information with respect to each potential form of visual record of the Ranfts' activities:

(a) The date on which it was taken;

(b) The name and home address of each individual who participated in any manner in the taking of each such photograph, slide, movie or videotape;

(c) The name and address of the employer of each individual named in response to the above interrogatory;

(d) The names and addresses of all individuals depicted or otherwise shown in any manner in each such movie, videotape, photograph or slide;

(e) The exact address of each location or home in any manner depicted in each such movie, videotape, photograph or slide;

---

[6]Although actual production of the surveillance materials was not sought, the interrogatory questions were undoubtedly prelude to that request.

(f) A complete and exact description of all activities, functions or work performed by the plaintiff depicted in any manner by each such movie, videotape, photograph or slide;

(g) State the form of each such piece of visual evidence, whether it be a photograph, movie, videotape, slide or other form of pictorial evidence.

Defendants refused to answer these interrogatories on the ground that the information sought was protected work-product. The Ranfts moved for an order compelling discovery. They pointed out that Mr. and Mrs. Ranft had already been deposed and argued that this preserved the impeachment value of whatever surveillance materials existed. The trial court denied the motion.

Although first recognized by the watershed common-law decision in *Hickman v. Taylor,* 329 U.S. 495 (1947), and extensively discussed in *Dudek,* the work-product doctrine in Wisconsin governing the discovery of tangible items is now generally codified by Rule 804.01(2)(c)1, Stats. This rule was not, however, intended to displace the principles enunciated in *Dudek. See Meunier v. Ogurek,* 140 Wis. 2d 782, 789, 412 N.W.2d 155, 158 (Ct. App. 1987). The work-product doctrine protects the enterprise—either analytical or entrepreneurial—by a party or by the party's agent. *See Dudek,* 34 Wis. 2d at 590-591, 598, 150 N.W.2d at 404-405, 408-409.

Rule 804.01(2)(c)1, Stats., provides:

Subject to par. (d) [dealing with facts known or opinions held by experts] a party may obtain discovery of documents and tangible things otherwise discoverable under par. (a) [the general provision setting forth the scope of discovery] and prepared in anticipation

of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the party seeking discovery is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Thus, application of the doctrine insofar as it relates to the pretrial discovery of tangible items requires a three-step analysis. First, a party seeking discovery must show that the items are within the scope of Rule 804.01(2)(a), Stats. Second, if that showing is successful, the party opposing discovery of the items must demonstrate that they were "prepared in anticipation of litigation or for trial." If so, the items are protected by the work-product doctrine. Third, if tangible items are work-product, the party seeking discovery must demonstrate a "substantial need of the materials in the preparation of the case" and that it "is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Although the first two steps also apply when discovery of other-than-tangible items is sought as well, the third-step showing is less stringent when only information is requested. *See Meunier,* 140 Wis. 2d at 789–790, 412 N.W.2d at 158. Specifically, a party seeking work-product information rather than "documents and tangible things" need only show that failure to permit discovery would result in the " 'objectives of pretrial discovery

298

[being] unnecessarily frustrated' " or, in the alternative, that there is other "good cause" for disclosure. *Id.,* 140 Wis. 2d at 790, 412 N.W.2d at 158 (quoting *Dudek,* 34 Wis. 2d at 591, 150 N.W.2d at 405).[7] The current prob-

---

[7]In *Meunier,* "[t]he interrogatory asked for the names and addresses of persons from whom [the defendants] had taken statements, the dates the statements were taken, the form of the statements and the name and address of the person having custody of the statements." *Id.,* 140 Wis. 2d at 787, 412 N.W.2d at 157. The trial court denied a motion to compel discovery on the ground that the information was protected work-product and that the plaintiff "had failed to show good cause or undue hardship as required by" Rule 804.01(2)(c)1, Stats. *Ibid.* Although agreeing that the information was work-product, the Court of Appeals held that Rule 804.01(2)(c)1's bases for disclosure applied only when tangible items were sought and that the standard was different when discovery sought information:

> Work product is privileged information. As such, work product is not subject to discovery "except where the objectives of pretrial discovery are unnecessarily frustrated and where good cause is shown to make exception to the rule." *Dudek,* 34 Wis. 2d at 591, 150 N.W.2d at 405. We read the rule disjunctively and conclude that information is discoverable if it fulfills either requirement.

*Meunier,* 140 Wis. 2d at 790, 412 N.W.2d at 158. We note, however, that *Dudek,* in the paragraph immediately following the one quoted by *Meunier,* enunciated a test that appears to have been the model for the prerequisites to disclosure contained in Rule 804.01(2)(c)1:

> Keeping in mind the reasons for the [work-product] privilege, good cause sufficient to warrant an exception must be based upon *necessity, prejudice, injustice or hardship.* This means that once a matter is classified as work product the court will require the party moving for discovery to make an adequate showing that *the information contained in the work product is unavailable from other sources and that a denial of discovery would prejudice the movant's preparation for trial.*

*Dudek,* 34 Wis. 2d at 591, 150 N.W.2d at 405 (emphasis added). If

lem must be analyzed in this light.

No appellate decision in Wisconsin has yet considered whether the existence of surveillance materials must be disclosed prior to trial. The majority rule, however, is that a party is entitled not only to know before trial whether he or she has been subjected to photographic or video surveillance but to have pre-trial access to the surveillance materials as well. *See* Annotation, *Discovery of Surveillance Photographs,* 19 A.L.R. 4th 1236 (1983). Two main reasons have been given for permitting pretrial access to surveillance materials: 1) modern litigation favors access to all relevant material rather than to reward "gamesmanship, surprise, or superior trial tactics," *see Dodson v. Persell,* 390 So. 2d 704, 707 (Fla. 1980); and 2) the possibility that the surveillance materials might be misleading or deceptive, *see Marte v. W.O. Hickok Mfg. Co.,* 552 N.Y.S.2d 297, 299 (N.Y. App. Div. 1990); *Snead v. American Export-Isbrandtsen Lines, Inc.,* 59 F.R.D. 148, 150 (E.D. Pa. 1973). These are not, however, sufficient reasons to compel pretrial disclosure of the work-product information here.

As we have already discussed, a Wisconsin trial court's decision concerning pretrial discovery will be sus-

---

this were a matter of first impression, we would hold that the criteria for the disclosure of tangible and intangible work-product are the same, *see* Van Domelen & Benson, *Witness Statements,* 61 Wis. Bar Bull., May 1988, at 25, but we are bound by *Meunier*'s conclusion to the contrary. *See In re Court of Appeals of Wisconsin,* 82 Wis. 2d 369, 371, 263 N.W.2d 149, 149–150 (1978) *(per curiam)* (a published decision by one district of the court of appeals is binding on the other districts). *Meunier* concluded that the information sought in that case was work-product, but that discovery should be permitted "because failure to provide such information frustrates the objectives of pretrial discovery." *Meunier,* 140 Wis. 2d at 790, 412 N.W.2d at 158.

tained if it is rationally based on the facts and is consistent with established legal principles. This requires a balancing of the interests protected by the work-product doctrine against the interests that would be advanced by disclosure. *Dudek* explains:

> [W]hat is good cause for discovery depends upon the reason a certain item is classified work product and the reason advanced for demanding discovery. This approach to the problem requires the exercise of sound judicial discretion by the trial judge confronted with the problem. It is a question of fairness tempered by the basic concepts of our adversary system and the desirable aspects of pretrial discovery.

*Dudek,* 34 Wis. 2d at 592, 150 N.W.2d at 405. As noted, non-tangible work-product should not be disclosed unless that would "unnecessarily frustrate" the "objectives of pretrial discovery" or unless disclosure is required by other "good cause." *Meunier,* 140 Wis. 2d at 790, 412 N.W.2d at 158.

A lawyer's strategic decision to invest a client's resources on photographic or video surveillance is protected work-product. The decision not only reflects the lawyer's evaluation of the strengths or weaknesses of the opponent's case but the lawyer's instructions to the person or persons conducting the surveillance also reveals the lawyer's analysis of potentially fruitful areas of investigation. *See Dudek,* 34 Wis. 2d at 589, 150 N.W.2d at 404 ("[A] lawyer's work product consists of the information he has assembled and the mental impressions, the legal theories and strategies that he has pursued or adopted as derived from interviews, statements, memoranda, correspondence, briefs, legal and factual research, mental impressions, personal beliefs, and other tangible

301

or intangible means."); *cf. Hickman,* 329 U.S. at 513 (A lawyer's memorialization of a witness' oral statement is work-product because it reveals "what he saw fit to write down."); *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1326, 1328–1329 (8th Cir. 1986) (an attorney's selection or compilation of documents in anticipation of litigation may be protected work-product); *Sporck v. Peil,* 759 F.2d 312, 315–317 (3rd Cir. 1985) (an attorney's selection or compilation of documents in anticipation of litigation may be protected work-product), *cert. denied,* 474 U.S. 903. Disclosure of the fact of surveillance and a description of the materials recorded would thus impinge on the very core of the work-product doctrine. Accordingly, there must be a strong showing to warrant its disclosure. *See Dudek,* 34 Wis. 2d at 591, 150 N.W.2d at 405; *see also Crull v. Preferred Risk Mut. Ins. Co.,* 36 Wis. 2d 464, 153 N.W.2d 591 (1967) (photographs of terrain taken on behalf of plaintiff are protected work-product but discovery ordered because of subsequent change in topography).

Although few, if any, are blessed with perfect memory, the appellate record does not indicate that Mrs. Ranft is not aware of her physical limitations or that she does not know what she did or did not do since the accident. In fact, the appellate record reveals that for a time she kept a diary of some of her post-accident experiences. As long as the Ranfts have an opportunity to seasonably challenge any surveillance material prior to the defendants' use of the material at trial, neither the Ranfts nor the trial's truth-finding function will be prejudiced. Indeed, as a general proposition that is not intended to reflect on any party or lawyer in this case, concern that surveillance material exists might very well advance, rather than impede, the quest for truth. As H.L. Mencken once observed: "Conscience is the inner

voice which warns us that someone may be looking."
H.L. Mencken, *A Mencken Chrestomathy* 617 (1956).[8]

The Ranfts have not demonstrated that failure of pretrial disclosure would "unnecessarily frustrate" the "objectives of pretrial discovery" or, alternatively, that there is "good cause" that requires disclosure before trial. *Meunier,* 140 Wis. 2d at 790, 412 N.W.2d at 158. As the trial court pointed out, any surveillance materials would have no "probative value" if Mrs. Ranft "testifies in conformity with the facts as they are and answers truthfully in all respects." The trial court did not abuse its discretion in declining to grant the Ranfts' motion to compel discovery. If defendants wish to use any surveillance materials at trial, the trial court should give the Ranfts ample opportunity to challenge the materials outside the jury's presence prior to any decision on their admissibility. *See* Rule 901.04(1), (3)(d), Stats.

*By the Court.*—Order affirmed in part and reversed in part.

---

[8]Courts ordering discovery have addressed this concern by permitting disclosure only after the party subjected to surveillance has been deposed. *See, e.g., Dodson,* 390 So. 2d at 708; *Marte,* 552 N.Y.S.2d at 300. Although a pretrial deposition does permit the opposing party to "lock in" certain testimony, revelation of surveillance materials prior to trial renders that safeguard problematic at best; post-hoc explanations can always, at least partially, defuse damaging deposition testimony.