IN RE COURT OF APPEALS OF WISCONSIN.

*Decided March 3, 1978.*
(Also reported in 263 N.W.2d 149.)

*PER CURIAM.* In April, 1977, the voters of Wisconsin endorsed by over a two-thirds margin the establishment of a Court of Appeals.

The language of Article VII, section 2, of the Constitution as approved by the voters creates "a court of appeals" and authorizes the Legislature to decide the jurisdiction of the Court of Appeals, the number of judges, the districts in which the judges would be elected, and the districts for venue purposes. The legislature was directed to have the Court of Appeals operational by August 1, 1978.

To implement the constitutional amendment, the Legislative Council appointed a special committee on court reorganization. This committee was directed to prepare by August 1, 1977, legislation setting up the Court of Appeals. The committee in preparing this legislation used as its principal guide the 1973 report of the Citizens Study Commission on Judicial Organization which had been appointed by Governor Lucey in 1971 at the request of Chief Justice Hallows.

The Legislature considered the proposals of the special committee at a special session in November, 1977, and Chapter 187 of the Laws of 1977 was enacted establishing the Court of Appeals. The statute divides the state into four districts for purposes of election of judges and venue, and at the same time emphasizes the unitary nature of the Court of Appeals as embodied in its consti-

tutional status as "a court of appeals." The Court of Appeals is treated as a single court administered by a single chief judge. The Court of Appeals has one administrative headquarters, namely Madison, although panels of the Court sit in numerous locations in the state. The published decision of any one of the panels has binding effect on all panels of the Court. The judges in each district are designated as a panel of the Court rather than as a separate court. The Court of Appeals is funded by the state and not by local governments in each of the districts.

The constitutional and statutory provisions clearly set forth the mandate that the Court of Appeals function as a single court under a chief judge and not function as four separate courts. The administrative and procedural policies adopted by this Court and the Court of Appeals should further this mandate.

The state Department of Administration is now in the process of leasing space in the four chambers locations so that the Court of Appeals can become operational on August 1, 1978, as directed by the constitutional amendment. In determining the amount of space required for the Court of Appeals in each location, it is necessary that a decision be made as to the number of staff to be officed in each location. This in turn is dependent upon whether certain administrative and staff support functions are to be performed at the administrative headquarters in Madison or in the four chambers locations. The responsibility for making this decision falls upon this Court. The administrative authority over the court system is vested in the Chief Justice and the Supreme Court by section 3(1) of Article VII of the Constitution; section 751.02, Stats., directs this Court to determine the number of employees of the Court of Appeals; it has always been the responsibility of this Court to establish the budget for the state funded portion of the cost of the judicial system.

The administrative staff of an appellate court, in addition to the law clerks and secretaries of the individual judges, consists primarily of central staff counsel (called commissioners in the Supreme Court) and personnel of the clerk's office. There are three alternatives available in establishing this staff for the Court of Appeals:

1. The same staff could serve both the Supreme Court and the Court of Appeals with the clerk of the Supreme Court also being the clerk of the Court of Appeals. This would require an increase in the number of Supreme Court central staff counsel and in the staff of the clerk of this Court.

2. The Court of Appeals could have a separate clerk's office and separate central staff counsel all located in Madison.

3. The Court of Appeals could have a separate clerk's office and one or more staff counsel located in each of the four chambers locations.

We have considered and have rejected the first alternative. We believe that it is important for the Court of Appeals to be independent of the Supreme Court in its case deciding function. This independence can best be achieved by the Court of Appeals having its own clerk and its own central staff.

As between the second and third alternatives, we are of the opinion that the status of the Court of Appeals as a single court and economy of operation will both result from having the clerk's office and the staff counsel located in a central office in Madison. This view is consistent with Chapter 187 which establishes Madison as the administrative headquarters of the Court of Appeals. We believe it is significant that the Legislature, in designating the cities in each of the four appeals districts where the panels will sit, called them "chambers" locations rather than headquarters, implying that only the

judges and their personal staffs, and not clerk's offices and legal staff, would be placed in those cities.

Uniformity in administration will be enhanced with one clerk's office, rather than four, interpreting and applying the rules of appellate procedure. Uniformity is particularly desirable in docketing of cases, advising counsel on the requirements of the rules and administration practices, ruling on requests for extensions of time for filing transcripts and briefs, assuring that various motions and other papers comply with rules, and in various other administrative matters. Uniformity in ruling on motions and in screening cases for oral argument or on brief treatment, the two principal activities in which the staff counsel will assist the Court of Appeals, will also be enhanced because the staff counsel will be aware of how each panel is deciding these matters. Where the panels are operating differently and uniformity is desirable, corrective action can be taken. If there were a separate clerk's office and staff counsel in each district, it is quite likely that disparities in application of the appellate rules, in the treatment of motions, and in screening would develop among the four districts. This, we believe, would be unfortunate and should be avoided if possible.

It will also be much easier for the settlement commissioner to function if all of the records are in Madison. Another advantage of having the clerk's office and all records in Madison is in the ease of obtaining these items by this Court when a petition to bypass, a petition to appeal, or a petition for a supervisory writ is filed with this Court and a review of the trial court record and Court of Appeals record is necessary.

The central clerk's office should not impose any substantial burden upon counsel or litigants because most contact with the clerk's office of an appellate court is by mail or telephone and not in person.

The centralization of the staff of the Court of Appeals is also less costly because duplication is avoided. Less personnel will be required to perform the same function. Problems in use of staff resulting from any imbalances in workload among the four districts are also avoided with a central staff.

For these reasons we conclude that the office of the clerk of the Court of Appeals and the staff counsel of the Court of Appeals should be located in Madison. If experience shows that minor adjustments to this system are necessary they can be made by this Court or the Chief Justice at a later date after a sufficient trial period has elapsed.

We do believe that, notwithstanding the central staff in Madison and the three secretaries and three law clerks in each district, it will also be necessary to have one additional staff person in each district outside of Madison. This staff person will be responsible for the library in each district, and for the trial court record when it is transferred to the district from the clerk's office in Madison when the appeal is ready to be heard. The person will deal with attorneys on oral argument days, process the filing of opinions, and perform other duties as are assigned.

Although Chapter 187 directs only that there be a chief judge of the Court of Appeals, we think it will be necessary also to have a presiding judge in each of the three districts in which the chief judge is not located. In any collegial group, one person must have the responsibility for presiding at conferences, serving as spokesman for the group, and performing necessary administrative functions. The presiding judge will be selected by the Chief Justice with the approval of the Supreme Court. The additional staff person in each district referred to

above can be assigned to the presiding judge as an administrative assistant.

The chief judge of the Court of Appeals will be responsible for the administration of the entire court. These duties will be time-consuming and will require an administrative assistant to permit the chief judge to perform them as well as to decide cases. Whether the administrative assistant will be located in Madison or where the chief judge has chambers will be determined by the chief judge.

After the election of the judges of the Court of Appeals in April, 1978, and the selection of the chief judge, this Court will make arrangements for a meeting of the judges of the Court of Appeals in order to make arrangements for the recruitment and selection of the employees of the Court of Appeals to be appointed by this Court pursuant to sec. 751.02, Stats. That section provides that the Supreme Court appoint the employees it considers necessary for the execution of the functions of the Court of Appeals. The executive officer of this Court is directed to assist the judges of the Court of Appeals in implementing the decisions set forth in this opinion.