Keng MOUA, a minor, by his guardian ad litem, Jill R. Schilling, Kay Moua and Van Song Gen Moua, special administrators of the Estate of Neng Moua, deceased, special administrator of the Estate of Chir Pao Xiong, deceased, Xee Lee Xiong, individually, See Moua, Chia Moua, Jou Moua, Tseng Moua, Mai Lai Moua, and Kay Moua, minors, by their guardian ad litem, Jill R. Schilling, Teng Xiong, Kia Xiong, Chow Xiong, Pay Xiong, Ker Xiong, and Kou Xiong, minors, by their guardian ad litem, Jill R. Schilling, Petitioners-Appellants,†

v.

NORTHERN STATES POWER COMPANY and Arnold Sumstad, Defendants-Respondents.

Court of Appeals

*No. 89-1705. Submitted on briefs May 29, 1990.—Decided June 26, 1990.*

(Also reported in 458 N.W.2d 836.)

†Petition to review denied.

On behalf of the petitioners-appellants, the cause was submitted on the brief of *Cindra R. Carson* and *Mark C. Skolos* of *Hertel, Carson, White, Schilling & Barr, S.C.* of Eau Claire.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Michael F. O'Brien* of *Garvey, Anderson, Kelley & Ryberg, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   The administrators of the Estates of Neng Moua and Chir Pao Xiong, and the families of the decedents (collectively Moua), appeal a summary judgment dismissing their personal injury and wrongful death claims against Northern States Power Company and one of its employees, Arnold Sumstad (collectively NSP). The trial court concluded that Wisconsin's recreational use statute, sec. 895.52, Stats., immunized NSP from liability for the injuries and deaths occurring when water from the Cedar Falls Dam rushed over the ledge where Keng and Neng Moua and Chir Pao Xiong were fishing.

Insofar as it relates to this appeal, sec. 895.52(2) and (6), Stats., provides:

> (2)   . . . (a) . . . no owner . . . owes to any person who enters the owner's property to engage in a recreational activity:
>
> 1.  A duty to keep the property safe for recreational activities.
>
> 2.   . . . to inspect the property . . ..

181

    3. . . . to give a warning of an unsafe condition, use or activity on the property.

    (b) Except as provided . . . no owner . . . is liable for any injury to . . . a person engaging in a recreational activity on the owner's property . . ..

    . . ..

    (6) . . . Subsection (2) does not limit the liability . . . if . . ..

    . . ..

    (b) The injury is caused by the malicious failure of the . . . owner . . . to warn against an unsafe condition on the property, of which the . . . owner knew.

    (c) The injury is caused by a malicious act of the . . . owner . . ..

The trial court decided that NSP was entitled to summary judgment because this statute provided immunity.

Moua asserts the inapplicability of sec. 895.52, Stats., where: (1) The negligence of the landowner occurs on property physically separate from the recreational property or when the landowner's negligence is unrelated to a recreational use; (2) the landowner receives pecuniary benefits in excess of $500 annually from nonrecreational business use of the land; (3) the negligence causes death rather than mere injury; and (4) the negligence would support a claim for punitive damages.[1] We reject these arguments and affirm the trial court's decision.

---

[1] Moua also argues that sec. 895.52 violates constitutional due process and equal protection. However, because the record does not show that the plaintiffs served the attorney general with notice of this constitutional challenge, we cannot review this issue on appeal. *See Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 117, 280 N.W.2d 757, 764–65 (1979); *Estate of Fessler v. Fessler,* 100 Wis. 2d 437, 444, 302 N.W.2d 414, 418 (1981).

The material facts are undisputed. NSP owned and operated the Cedar Falls Dam located on the Red Cedar River in Dunn County. NSP also owned the west river bank area below the dam where it permitted public fishing without charge. On May 17, 1986, several people, including Neng and Keng Moua and Chir Pao Xiong, were fishing on a rock ledge in this area. Three times during that day, Sumstad, the dam operator, modified the height of the gates of the dam to permit excess water to flow past the dam. Standard procedure when opening the gates included (1) walking out to an observation area to make a visual check for persons in the spillway areas, (2) walking back to the controls to open the gate one inch as a warning to anyone below the dam, (3) walking out to the observation area again to assure that persons, if any, "were in a safe place," (4) walking back to the controls to open the gate to the desired height, generally one foot or less, and (5) walking back to the observation area for a final check.

Sumstad utilized this standard five-step procedure all three times that he modified the height of the gates on May 17. Sumstad's first observation of the day about 9 a.m. revealed a group of six, seven or more unidentified fishermen close together below the dam. After Sumstad's first one-inch modification, he observed the fishermen look toward the dam, pick up their fishing gear and move to higher ground. His observations on each occasion thereafter disclosed the fishermen remained on the higher ground. Although he may have seen fewer fishermen, Sumstad assumed the others had walked farther downstream and out of his view. Even after the sheriff's department called shortly after noon to report a drowning, Sumstad looked again and reported the presence of fishermen standing in the area where those seen earlier had moved several hours earlier in the day. A

183

later investigation revealed, however, that after the last modification, the release of water propelled Neng and Keng Moua and Chir Pao Xiong into the river. Neng Moua and Xiong drowned, while Keng Moua sustained injuries.

In reviewing motions for summary judgment, appellate courts must apply the standards set forth in sec. 802.08, Stats., in the same manner as trial courts. *Heck & Paetow Claim Serv. v. Heck,* 93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980). Summary judgment is granted when there is no genuine issue of material fact and only a question of law is at issue. *See* sec. 802.08(2), Stats. That is the case here. Only the interpretation and application of sec. 895.52, Stats., is in dispute, and this is a question of law that we decide without deference to the trial court's decision. *See Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

## SEPARATE PROPERTY/SEPARATE NEGLIGENCE

Moua first asserts that sec. 895.52, Stats., does not provide immunity because NSP's negligence occurred on the business portion of the premises. He argues that sec. 895.52 is ineffective when the property is physically divided for recreational and business uses, and the acts of negligence occur on the business parcel.

Whether a statute is ambiguous is a question of law that we review independently of the circuit court. *Warren v. Link Farms,* 123 Wis. 2d 485, 488, 368 N.W.2d 688, 689-90 (Ct. App. 1985). A statute is ambiguous only if reasonable people could disagree as to its meaning. *Id.* at 488, 368 N.W.2d at 689. This statute

184

does not distinguish between recreational and nonrecreational property,[2] but, rather, it provides immunity from liability in unambiguous terms to any person who enters "the owner's property" to engage in a recreational activity. Sec. 895.52(2)(a), Stats. The proposed distinction is not found in the law either expressly or by inference. The accident victims entered NSP's property to engage in fishing, explicitly defined as a recreational activity.[3] *See* sec. 895.52(1)(g), Stats. In the absence of malice, the flow of water that swept them into the river was a condition or activity on the property about which NSP had no legal duty to warn. *See* sec. 895.52(2)(a)3, Stats.

Moua's second argument is related to the first. He claims that the hazard causing the injuries and deaths was brought about by nonrecreational activities within NSP's control and argues that the statute only applies to

[2]This court in *Bystery v. Village of Sauk City,* 146 Wis. 2d 247, 430 N.W.2d 611 (Ct. App. 1988), held that a municipality is immune for lack of repair of a sidewalk only when it has withdrawn the sidewalk from the transportation uses and has devoted it to recreational activities. *Id.* at 251–52, 430 N.W.2d at 613. This distinction between recreational and nonrecreational property, however, was effected in order to harmonize sec. 895.52 with sec. 81.15, Stats., which imposes a duty on municipalities to keep highways and sidewalks in a safe condition. *Bystery,* 146 Wis. 2d at 251–52, 430 N.W.2d at 613. There is no similar safety statute relating to the fishing area where the accident occurred here.

[3]The amended complaint alleges that the participants "were fishing for the purpose of obtaining food to sustain their family members; they were not fishing for the purpose of exercise, relaxation or pleasure." The subjective intent of the participant in activities enumerated in sec. 895.52 is irrelevant. *See Bystery,* 146 Wis. 2d at 254, 430 N.W.2d at 614.

185

hazards that are natural or are related to the recreational use. Again, the statute makes no such differentiation. An owner is not liable for *any injury* to a person engaging in a recreational activity on the owner's property. Sec. 895.52(2)(b), Stats. This court has already held that sec. 895.52 does not distinguish between artificial and natural conditions. *See Sauer v. Reliance Ins. Co.,* 152 Wis. 2d 234, 241, 448 N.W.2d 256, 259 (Ct. App. 1989) (plaintiff drowned while fishing when he stepped into a hole created by a bridge replacement project).

This court has also recognized immunity where the injury was indirectly related to the recreational activity. In *Hall v. Turtle Lake Lions Club,* 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988), the injury occurred when the plaintiff stepped into a hole on the way to the restroom while attending a fair. Although we conclude that the statute's language unambiguously applies to hazards that are not natural or are not related to the recreational use by the plaintiff, we also state that a contrary construction of the statute would severely circumscribe the immunity afforded to property owners, which is inconsistent with the expressed legislative intent to protect them from liability. *See* 1983 Wis. Act 418, sec. 1.

### LANDOWNER'S PECUNIARY BENEFITS

■■■■■

An exception to immunity does exist if the owner collects money, goods or services in payment for the use of the property for recreational purposes and if the aggregate annual amount exceeds $500. Sec. 895.52(6)(a), Stats. Contrary to Moua's argument, however, the pecuniary benefit must come from the use of the property for recreational activities, not from the owner's business activities that are unrelated to the

recreation. *See Douglas v. Dewey,* 154 Wis. 2d 451, 462, 453 N.W.2d 500, 505 (Ct. App. 1990). Moua does not claim that NSP received any pecuniary benefit for allowing the public to fish on its property.

## IMMUNITY FOR WRONGFUL DEATH

Moua next argues that sec. 895.52, Stats., does not provide immunity for death, but only for injury, because the statute does not mention death. *See* sec. 895.52(2), Stats. Section 895.52(1)(b) states that injury "means an injury to a person or to property." NSP argues that the term "injury" is all-encompassing and includes death which is the ultimate injury. We conclude that an ambiguity exists because the term "injury" is capable of being understood by a reasonably well-informed person in more than one way. *See Sturgis v. Town of Neenah Bd.,* 153 Wis. 2d 193, 198, 450 N.W.2d 481, 483 (Ct. App. 1989). Thus, we are permitted to look beyond the statutory language and examine the scope, history, context, subject matter and object of the statute to discern legislative intent. *Id.*

Moua cites other statutes to show that the legislature has historically drawn distinctions between injury and death by specifically including death where it intended.[4] This argument is not persuasive because the legislature has also defined the term "injury" to include injuries resulting in death.[5] Additionally, none of these statutes are *in pari materia* with sec. 895.52, Stats., and, therefore, we do not compare them in order to ascertain

[4]*See* secs. 30.67(2), 346.67(1), 346.70(1), 893.54(1) and (2), 893.80(3), 893.82(3), 895.51, 940.09 and 940.25, Stats.

[5] *See* secs. 346.70(1), Stats. and 893.54, Stats. (Although sec. 893.54 provides separate subsections for injury and death, this section is entitled "Injury to the person.")

legislative intent. *See Wisconsin Bankers Ass'n v. Mutual S&L Ass'n,* 96 Wis. 2d 438, 454, 291 N.W.2d 869, 877 (1980).

We reject a construction of sec. 895.52, Stats., that excludes immunity for death because it would run counter to the purpose of the statute—to encourage owners to open their land to the public for recreational activities. *See Bystery,* 146 Wis. 2d at 252, 430 N.W.2d at 613. Construing the statute to immunize owners for injuries to recreational users, but to retain liability for their deaths, would lead to unreasonable results. *See State v. Clausen,* 105 Wis. 2d 231, 244–45, 313 N.W.2d 819, 826 (1982) (A statute should be construed to avoid an unreasonable or absurd result.). Thus, we look to the rest of the statute to discern the legislative intent. *See id.*

We also note that while the predecessor to sec. 895.52, Stats., included both the terms "injury" and "death," *see* sec. 29.68(2m), Stats. (1981–82), there is nothing in 1983 Wis. Act 418, sec. 1, suggesting the legislative intent to narrow the scope of immunity. To the contrary, this section states that the statute should be liberally construed in favor of property owners to protect them from liability. Therefore, we hold that the term "injury" in sec. 895.52 includes injuries that result in death.[6]

---

[6]We note that this court has previously upheld sec. 895.52 immunity in a wrongful death action, although this issue was not raised. *See Sauer.*

Section 895.52(6)(b) and (c), Stats., provides exceptions to immunity for a private property owner if the injury is caused by the malicious failure to warn against an unsafe condition on the property of which the owner knew or if the injury is caused by a malicious act. Moua argues that malice includes wanton, wilful and reckless conduct. We disagree. The law distinguishes between malice and those acts that were formerly characterized as "gross negligence." Punitive damages, for example, may be imposed upon proof of conduct characterized as malicious *or* wanton in reckless disregard of rights. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 275, 294 N.W.2d 437, 442 (1980). To recover punitive damages, proof is not required of an intentional desire to injure, vex or annoy, or proof of malice; a showing of reckless indifference is sufficient. *Id.* at 267, 294 N.W.2d at 442.

Acts are malicious when they are the result of hatred, ill will, a desire for revenge or inflicted under circumstances where insult or injury is intended. *See* Wis JI—Civil 1707 (1989). A person's conduct is wanton, wilful and in reckless disregard of the plaintiff's rights when it demonstrates an indifference on his part to the consequences of his actions, even though he may not intend insult or injury. *See id.*

Because we cannot conclude that the term "malicious" is capable of being understood by a reasonably well-informed person in more than one way, we must give the language its ordinary and accepted meaning. *See Sturgis,* 153 Wis. 2d at 198, 450 N.W.2d at 483. Webster's Third New International Dictionary 1367

(1976) defines malice as: "1a(1): intention or desire to harm another . . .." Moua does not show that the injuries and deaths were caused by a malicious failure to warn against an unsafe condition on the property or by a malicious act.

Section 895.52(b) and (c), Stats., only provides exceptions when malice is involved. If an exception to immunity is desirable under circumstances where less than intent to injure is sufficient, it is up to the legislature and not this court to make this change.

Moua also argues that sec. 895.52 does not apply when the owner knows of an actual and substantial danger. He states that this point also bears on the question of NSP's malice and presents a question of fact for trial. Regardless of whether such knowledge constitutes malice, Moua has not presented any evidence of NSP's alleged knowledge of actual and substantial danger. The record discloses that there were no prior drownings at or below the Cedar Falls Dam. NSP's answers to interrogatories also indicate that there were no similar drownings at any of NSP's dams anywhere so as to attribute knowledge of an actual and substantially dangerous condition to NSP.[7]

*By the Court.*—Judgment affirmed.

---

[7]The record includes a report of a deputy sheriff who investigated the drowning and attributes a statement to Sumstad that he "felt the same way I did when I killed my first German in the war." The report concludes: "It appeared to me that Mr. Sumstad felt badly about what had happened." Sumstad filed an affidavit in response detailing his extensive World War II military record and indicating that if he made the remark, he meant that "witnessing or experiencing a death is a traumatic experience." The plaintiffs do not rely upon the remark as a basis

to establish malice, and this court concludes that a reading of the remark in context fails to suggest an inference of malice relative to Sumstad's opening the gates.