David William LINVILLE, Sr., and Estate of David Linville, Jr., Plaintiffs-Appellants,

v.

CITY OF JANESVILLE, David Moore, Gary Myers, Paul Bloom, Stephen Dorsey, Wes Meacham, Dennis Witek, Kenneth Bollinger, Arthur Stearns, Larry Grorud, The City's & Village's Mutual Insurance Company, ABC Fireman DEF Policemen, GHI Paramedics, XYZ Insurance Company, and QQQ Insurance Company, Defendants-Respondents.

Kelly C. LINVILLE, and CPC Greenbrier Hospital, Plaintiffs-Appellants,

v.

CITY OF JANESVILLE, Paul Bloom, Dennis Witek, Kenneth Bollinger, Larry Grorud, Stephen Dorsey, Wes Meacham, Arthur Stearns, The City's & Village's Mutual Insurance Company, XYZ Insurance Company, and QQQ Insurance Company, Defendants-Respondents.†

Court of Appeals

No. 91–1099. Submitted on briefs January 8, 1992.—Decided February 25, 1993.

(Also reported in — N.W.2d —.)

---

†Petition to review granted.

*See Callaghan's Wisconsin Digest, same topic and section number.

573

For the plaintiffs-appellants the cause was submitted on the brief of *Michael E. McMorrow* of *Michael E. McMorrow Law Office* of Elm Grove.

For the defendants-respondents the cause was submitted on the brief of *Thomas J. Basting, Sr.* and *Margery M. Tibbetts* of *Brennan, Steil, Basting & MacDougall, S.C.* of Janesville.

Before Gartzke, P.J., Dykman and Sundby, JJ.

GARTZKE, P.J. The plaintiffs appeal from summary judgment dismissing their complaints in two actions brought against the City of Janesville, city fire chief, deputy fire chief, a fire department shift commander and four city paramedics. In mid-November 1988, David Linville, Jr., then four years old, drowned in a city park open to the public. After the paramedics extricated David from the submerged van in which he was a passenger and gave him emergency medical treatment, he was taken to a hospital where he died. The plaintiffs in one action are David's estate and his father, individually and as special administrator of David's estate, and the principal plaintiff in the second action is David's mother. The two actions were consolidated. We reverse that part of the judgment dismissing the complaint against the city, its paramedics and the shift commander, and otherwise affirm.[1]

The plaintiffs charge that the city and its employees negligently effected the rescue and negligently provided emergency medical services to David. David's father seeks damages for David's death. David's estate seeks specified damages for his injuries and death. David's mother claims damages for her physical and emotional injuries, medical expenses as well as other damages connected with David's death.

The dispositive issues are (1) whether defendants are entitled to recreational land use immunity from liability to the plaintiffs under sec. 895.52, Stats., because the drowning occurred in the city park; and (2) whether defendants are entitled to immunity from suit

---

[1] The father's complaint also named certain city police officers. The father contested the defendants' motion for summary judgment only with respect to the city and its fire officers and paramedics. The mother's complaint named the city and its fire officers and paramedics but not the police.

by the plaintiffs under sec. 893.80, Stats., because the defendants exercised discretion as municipal employees.

We hold that none of the defendants is entitled to immunity under either theory. We therefore reverse the judgment dismissing the complaints against the city, its shift commander and the paramedics. Since the plaintiffs assert that the fire chief and deputy chief violated a ministerial duty which they have not been shown to possess, we affirm the judgment as to those two defendants.

1. Summary Judgment on Recreational Use Immunity from Liability

It is undisputed that Janesville owns the park in which David drowned. Section 895.52(2)(b), Stats., provides in relevant part: "[N]o owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property . . .." Section 895.52(1)(g), Stats., provides in relevant part: " 'Recreational activity' means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. 'Recreational activity' includes . . . fishing, . . . picnicking, . . . [and] sight-seeing . . .."

We review *de novo* an order entered on a motion for summary judgment. *Grosskopf Oil Inc. v. Winter*, 156 Wis. 2d 575, 581, 457 N.W.2d 514, 517 (Ct. App. 1990). Summary judgment cannot be granted if genuine issues of material fact exist. *Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476-77 (1980). That the complaints state claims is not disputed. The answers deny liability and plead immunity. The defendants moved for summary judgment dismissing the

complaints. Since the motions for summary judgment are directed against the plaintiffs, we review the material submitted for and against the motions in the light most favorable to the plaintiffs. *Id.* at 338-39, 294 N.W.2d at 477.

The defendants' theory is that because David and his mother were engaged in a recreational activity at the time of their injuries in the city park, defendants are immune from liability by virtue of sec. 895.52(2)(b), Stats. Defendants rely on the mother's deposition to support their theory.

The mother deposed that on the night of November 12, 1988, a Walter Hadden drove her and David in Hadden's van to a grocery store. When she returned to the van, she found that Hadden had been to a liquor store to buy a twelve-pack of beer and had been drinking. They argued because of his drinking. She told Hadden to take them home, but he ignored her. He said he wanted to take David where Hadden had fished when he was young. Hadden drove to a pond in the park and stopped the van at the water's edge, facing the water, and shined the van's lights on the water to show a good fishing spot. Everybody stayed in the van perhaps ten minutes, during which the mother argued and said she wanted to go home. Hadden's response was to put off her request.

When Hadden started to back the van away from the water, it stuck. The mother got out, went to the front of the van, and tried to push it backwards, but it jumped forward into the water and started to sink, with David and Hadden in it. After unsuccessfully attempting to open the side door, she ran for help. Later the city fire and police officers and paramedics arrived and winched the van out of the pond. The paramedics tried to resuscitate David at the scene and then took him to the hospital where he died. Hadden also drowned.

The trial court concluded that because the parties were at the pond for recreational purposes, the city and its employees were immune from liability under sec. 895.52, Stats. The court also concluded that because the city's employees performed discretionary acts during the rescue, they were immune from suit under sec. 893.80, Stats.

The plaintiffs argue that whether David and his mother engaged in recreational activity is a disputed issue of fact. We disagree. The material facts have been established through the mother's deposition. The facts are simple. Ignoring her repeated demands to be taken home, Hadden took the mother and David to the pond in the city park to show David fishing spots. David drowned in the pond and later died from his injuries. Neither the plaintiffs nor defendants claim that the facts are otherwise.

The material facts having been established, whether the conduct of David and his mother was recreational activity for purposes of sec. 895.52, Stats., is a question of law. *Kruschke v. City of New Richmond*, 157 Wis. 2d 167, 169-70, 458 N.W.2d 832, 833 (Ct. App. 1990); *Sauer v. Reliance Ins. Co.*, 152 Wis. 2d 234, 240, 448 N.W.2d 256, 259 (Ct. App. 1989). We review questions of law without deference to the opinion of the trial court. *First Nat'l Leasing Corp. v. City of Madison*, 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

We apply an objective test to the undisputed facts to determine whether an injured person was engaged in a "recreational activity," as defined in sec. 895.52(1)(g), Stats. *Silingo v. Village of Mukwonago*, 156 Wis. 2d 536, 544, 458 N.W.2d 379, 382 (Ct. App. 1990). The test

requires examination of all aspects of the activity. The intrinsic nature, purpose and consequence of the activity are relevant. While the injured person's subjective assessment of the activity is relevant, it is not controlling. *Id.* at 544, 458 N.W.2d at 382-83. Thus, whether the injured person intended to recreate is not dispositive, *Moua v. Northern States Power Co.*, 157 Wis. 2d 177, 185 n.3, 458 N.W.2d 836, 839 n.3 (Ct. App. 1990), but why he was on the property is pertinent. *Stann v. Waukesha County*, 161 Wis. 2d 808, 822-23, 468 N.W.2d 775, 781-82 (Ct. App. 1991).

Hadden's activity at the pond was recreational, whether assessed objectively or on the basis of his subjective intent. He drove to and was at the pond to show David fishing spots. Fishing is a recreational activity, sec. 895.52(1)(g), Stats., and certainly so is showing a person a good fishing spot. *See Sauer*, 152 Wis. 2d at 240-41, 448 N.W.2d at 259 ("walking down the river to go fishing" is a recreational activity).

The mother was not engaged in a recreational activity. She had no reason whatever for being at the pond. She did not cause or will her presence at the pond. Indeed, she was there against her will, and Hadden must have known it. From the time the van left the store until it was stuck at the pond, she expressed her displeasure at not having been taken directly home. She repeatedly demanded she be taken home.

Because his mother was not engaged in a recreational activity, neither was David. In her affidavit, the mother states that she had custody and control of David on the date of the incident. David was four years old, an infant. The parent's purpose is imputed to the infant who accompanies its parent for purposes of determining whether the infant was engaged in a recreational activity. *Nelson v. Schreiner*, 161 Wis. 2d

580

798, 802, 469 N.W.2d 214, 216 (Ct. App. 1991).[2] Thus, in *Stann*, we said that when a mother took her three-year-old infant to a public beach to wade and the infant drowned, it was irrelevant that the infant had no discernible recreational purpose. 161 Wis. 2d at 823, 468 N.W.2d at 781-82. We held that the infant was at the beach for the purpose of engaging in a recreational activity.

That Hadden's purpose in taking David to the pond was recreational is irrelevant to our inquiry. Hadden was not David's father. Nothing in the record suggests that Hadden claimed the right to control David. David's mother had the exclusive right to decide where David would be and why. Her purpose was David's purpose.[3]

---

[2] The dissent suggests that we have implicitly overruled *Nelson* because in that case the intent of the child's mother played no part in our decision. But the mother in *Nelson* did not accompany the child. Rather, the child was accompanied by her putative father, and his intent *did* play an important part in our decision. *Id.* at 802, 803, 469 N.W.2d at 216, 217 ("where an infant accompanies an adult engaged in activities enumerated by the statute, the *parent['s] or custodian's* purpose is imputed to the child"; the child's putative father's "avowed purpose" was recreation) (emphasis added). We do not overrule *Nelson*, implicitly or otherwise. We follow it.

[3] The dissent's approach—counting the appeals in which owners prevailed—does not address the issue before us: how a four-year-old, whose mother was propelled to and kept at a park against her will, can somehow be held to have engaged in a recreational activity. Surely, persons falsely imprisoned do not recreate merely because their captor enjoys himself. No published opinion holds otherwise.

■ We conclude that none of the defendants enjoy recreational use immunity from liability to the plaintiffs under sec. 895.52(2)(b), Stats.[4]

2. Summary Judgment on Municipal Immunity from Suit

a. The Immunity Rule

Defendants claim municipal (or governmental) immunity from the plaintiffs' suits. Section 893.80(4), Stats., provides in relevant part that

---

[4] Contrary to the dissent's assertion, our holding is consistent with the legislature's direction that we liberally construe sec. 895.52, Stats., in favor of property owners. *See* sec. 1, 1983 Wis. Act 418. The reason for protecting owners from liability is to encourage them to open their lands to recreational uses. Protecting an owner and its agents from liability as to a person on the owner's land against that person's express will is beyond that purpose, except perhaps in the limited circumstance of a person whose injury is caused by a person engaged in a recreational activity. That limited circumstance is not an issue in this case. Defendants claim no immunity under sec. 895.52(2)(b), Stats., on grounds that Hadden, who had engaged in a recreational activity, caused David's death and his mother's medical problems. Moreover, in *Stann,* which the dissent unaccountably fails to discuss, we said:

> 1983 Wis. Act 418, by which the recreational immunity statute was enacted, provides, in part, at sec. 1, "[t]he legislature intends by this act to limit the liability of property owners *who use their property for recreational activities . . .."* (Emphasis added.) Thus, it *becomes necessary to inquire into the purpose of the property user (or those who supervise such a user) in order to decide whether the statute applies.*

161 Wis. 2d at 823, 468 N.W.2d at 781-82 (emphasis added).

[n]o suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency . . . or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

■ Municipal immunity from suit under sec. 893.80(4), Stats., differs in some respects from the immunity of a state officer or employee, often referred to as a public officer or employee. The immunity of a state officer or employee is based upon the common law. *C.L. v. Olson*, 143 Wis. 2d 701, 708, 422 N.W.2d 614, 616 (1988). The general common law rule in Wisconsin is that, subject to exceptions, a state officer or employee is immune from personal liability for injuries resulting from acts performed within the scope of the individual's office. *Id.* at 710, 422 N.W.2d at 617.

The common law immunity of municipalities and municipal employees for torts was abrogated in *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 40, 115 N.W.2d 618, 625 (1962), except when the municipality exercises "its legislative or judicial or quasi-legislative or quasi-judicial functions." The legislature incorporated that language into what is now sec. 893.80(4), Stats. *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 682, 292 N.W.2d 816, 825 (1980).[5]

■ After the *Holytz* decision, the general rule in Wisconsin "is liability—the exception is immunity" when a municipality or its officer or employee is charged

---

[5] Section 893.80(4), Stats., was previously numbered sec. 895.43(4), Stats. Section 29, ch. 323, Laws of 1979.

with tortious conduct. *Id.* at 39, 115 N.W.2d at 625; *Frostman v. State Farm Mut. Auto. Ins. Co.*, 171 Wis. 2d 138, 142, 491 N.W.2d 100, 101 (Ct. App. 1992).

Judicial decisions have established that the terms "quasi-legislative" and "quasi-judicial" in sec. 893.80(4), Stats., are synonymous with "discretionary," and that the three tests result in the same conclusions. *Scarpaci*, 96 Wis. 2d at 683, 292 N.W.2d at 826. In contrast to a discretionary act, a ministerial act is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 425, 474 N.W.2d 799, 801 (Ct. App. 1991). No immunity from suit attaches to the negligent performance of a ministerial duty.

The question in *Scarpaci* was whether a county medical examiner who negligently conducted an autopsy on the body of the plaintiffs' deceased child was immune from suit. The court held that the decision whether to proceed with an autopsy on the basis of the medical examiner's evaluation of the facts and law was quasi-judicial under what is now sec. 893.80(4), Stats. *Scarpaci*, 96 Wis. 2d at 684-85, 292 N.W.2d at 826. But the acts in performing the autopsy itself involved only medical discretion, *id.* at 686, 292 N.W.2d at 827, and municipal immunity did not protect the medical examiner from suit.

The court of appeals has held that *Scarpaci* has a narrow application. The court has said that only three Wisconsin decisions have recognized a "discretion but still not governmental discretion" distinction. *Stann*, 161 Wis. 2d at 818, 468 N.W.2d at 779 (referring to *Scarpaci*, 96 Wis. 2d 663, 292 N.W.2d 816, *Protic v.*

*Castle Co.*, 132 Wis. 2d 364, 392 N.W.2d 119 (Ct. App. 1986), and *Gordon v. Milwaukee County*, 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985)). The *Stann* court said that "each of these cases involved allegations of negligence regarding medical decisions. These cases are restricted to their facts, as no Wisconsin decision applies this exception in any other setting." *Id.* at 818, 468 N.W.2d at 779.

b. Fire Chief Stearns and Deputy Fire Chief Grorud

Chief Stearns and deputy chief Grorud were not at the scene of the drowning. Plaintiffs limit their contentions on appeal to a single issue regarding those defendants. Plaintiffs contend that because those defendants violated their ministerial duty to provide extrication equipment in each ambulance, they are not entitled to immunity under sec. 893.80(4), Stats., in this suit charging them with negligence. We disagree.

Plaintiffs rely upon Wis. Adm. Code sec. Trans 309.25(2) (1987). That administrative rule provides that unless an ambulance is accompanied by a rescue vehicle on every accident call, it must carry certain equipment, including a sledge hammer weighing at least four pounds, a fifty-one-inch crowbar, and two rescue pull chains not less than ten feet long with grab hooks. The first Janesville ambulance on the scene did not have at least some of the required equipment, and the rescue was first attempted without it, according to the paramedics' testimony.

Wisconsin Adm. Code sec. Trans 309.25 implements the ambulance inspection program prescribed by sec. 341.085, Stats. (1987-88). That statute requires the Department of Transportation, before issuing an original or renewal registration, to determine whether an

ambulance meets the requirements specified by law or administrative rule for medical equipment. It authorizes the department to adopt rules necessary to prescribe ambulance service equipment.

 There is no doubt that Wis. Adm. Code sec. Trans 309.25(2) imposed a ministerial duty on the City of Janesville as the ambulance provider to provide the equipment missing from the first ambulance on the scene, there being no evidence that that ambulance is accompanied by a rescue vehicle on every call. However, nothing in the record establishes that chief Stearns or deputy chief Grorud had the responsibility to outfit each ambulance with the equipment. The trial court properly dismissed the complaint as to those defendants.

### c. Shift Commander Bollinger and Paramedics

The plaintiffs limit their argument regarding Bollinger and the paramedics to their failure to promptly extricate David from the submerged van. Plaintiffs assert that because those defendants are claimed to have negligently performed their ministerial duty of rescue, they are not entitled to municipal immunity from suit under sec. 893.80(4), Stats. We agree.

The paramedics and shift commander Bollinger arrived at the drowning before David was taken from the submerged van. All knew that a van was submerged and that it contained occupants, and all are claimed to have negligently performed David's rescue from it. The plaintiffs claim several negligent acts, the most egregious of which is that the paramedics and Bollinger did nothing to rescue David for twenty minutes after their arrival. The paramedics assert that they began rescue efforts immediately.

As stated in *C.L. v. Olson*, 143 Wis. 2d at 717, 422 N.W.2d at 620, an

> exception to the general rule of public officer immunity exists where the public officer's or employee's duty is absolute, certain and imperative, involving merely the performance of a specific task *and* (1) the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for the exercise of judgment [or] discretion . . . *or* (2) there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion. . .. (Emphasis added and citations omitted.)

We restate the *C.L.* "known present danger" exception in terms of municipal or governmental immunity from suit for tortious conduct, since municipal immunity is the exception rather than the rule. *Holytz*, 17 Wis. 2d at 39, 115 N.W.2d at 625. As applied to the facts before us, the rule is that a municipal officer or employee under a duty to reasonably attempt the rescue of a person from a life-threatening danger is not immune from a suit charging the officer or employee with having negligently performed that duty.[6]

The Janesville paramedics are under such a duty. According to a deputy fire chief, paramedics are required to perform rescue operations in emergency situations, and they receive extensive rescue training. Consequently, the paramedic present at a life-

---

[6] The scope of that duty, as applied to the facts of this case, is not before us.

threatening danger, such as a drowning, has a ministerial duty promptly to attempt a rescue. Because the duty is ministerial, the paramedic enjoys no immunity from a suit alleging that he or she negligently performed it.

■

We turn to plaintiffs' second claim against the paramedics: that they negligently provided emergency medical services to David. According to the same deputy fire chief, the Janesville paramedics are also required to deliver emergency medical care in situations requiring such action, and they receive extensive training in advanced life support techniques and emergency medical care. While the paramedics exercise considerable discretion when providing that care, they are not immune from a suit claiming they negligently provided medical services. Municipal or governmental immunity under sec. 893.80(4), Stats., does not extend to the "medical decisions of medical personnel employed by a governmental body." *Scarpaci*, 96 Wis. 2d at 686-87, 292 N.W.2d at 827.[7]

### 3. Conclusion

---

[7] Our holding corresponds with the "Good Samaritan" law, sec. 895.48(1), Stats., which provides in relevant part:

> Any person who renders emergency care at the scene of any emergency or accident in good faith shall be immune from civil liability for his or her acts or omissions in rendering such emergency care. *This immunity does not extend when employes trained in health care or health care professionals render emergency care for compensation and within the scope of their usual and customary employment or practice . . . at the scene of any emergency or accident [or] enroute to a hospital . . ..* (Emphasis added.)

*See* 67 Op. Att'y Gen. 218, 222 (1978) (paramedic is a health care professional); *see also* Note, *Torts—Immunity—The Good Samaritan Statute*, 62 MARQ. L. REV. 469, 472, 479-80 (1979) (paramedics are not immune).

For the reasons stated, the judgment dismissing the plaintiffs' complaints against the City of Janesville, shift commander Bollinger and the paramedics must be reversed.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.

DYKMAN, J. (*dissenting*). There are two related problems with this case. The first has to do with an evolving consensus among court of appeals publication committee members that the court of appeals is powerless to overrule its erroneous decisions. The second problem is the effect that this consensus has on appellate decisionmaking. This case is an example of that effect.

Until recently, when the court of appeals concluded that a prior case had been wrongly decided, the incorrect portion of the opinion in that case was overruled or withdrawn. *See Kimpton v. School Dist. of New Lisbon,* 138 Wis. 2d 226, 234 n.4, 405 N.W.2d 740, 744 n.4 (Ct. App. 1987); *State v. Dunn,* 117 Wis. 2d 487, 492, 345 N.W.2d 69, 71 (Ct. App. 1984), *aff'd,* 121 Wis. 2d 389, 359 N.W.2d 151 (1984). Of course, we have always used the doctrine of *stare decisis* to explain our decisions. We have recognized that sec. 752.41(2), Stats. (officially published opinions of the court of appeals have statewide precedential effect), embodies the concepts of precedent and authority. *In re C.J.,* 120 Wis. 2d 355, 358 n.3, 354 N.W.2d 219, 221 n.3 (Ct. App. 1984). That concept was repeated by the supreme court several months before the court of appeals became operational on August 1, 1978, in *In re Court of Appeals of Wisconsin,* 82 Wis. 2d 369, 371, 263 N.W.2d 149, 149-50 (1978). The court said: "The published decision of any one of the panels has binding effect on all panels of the Court." *Id.*

Until recently, we had not held that *stare decisis,* or the concepts of precedent and authority, had anything other than their usual meanings. These concepts have always recognized that case law is not written in stone, and that occasionally, under limited conditions, courts find it necessary to overrule outmoded or erroneous holdings.

Rule 809.23(2), Stats., provides for a publication committee of the court of appeals. That committee determines whether a court of appeals opinion will be published. Recently, the committee began to question the authority of the court of appeals to overrule itself, and ultimately concluded that we could not do so. A case in which that occurred would not be published, and therefore, pursuant to Rule 809.23(3), Stats., could not be cited as authority. Subsequently, in *Ranft v. Lyons,* 163 Wis. 2d 282, 299-300 n.7, 471 N.W.2d 254, 260-61 n.7 (Ct. App. 1991), we concluded that although we had previously erred, we were required to follow the erroneous opinion.

Two reasons for our conclusion existed. First, the language of *In re Court of Appeals,* 82 Wis. 2d at 371, 263 N.W.2d at 149-50, and secondly, a concern that the power to overrule would be abused, leading to a situation where the precedential effect of an opinion would last only until the issue arose before another panel.

I do not believe that either reason necessarily leads to our conclusion. *In re Court of Appeals* was written at a time when the nature of the yet-to-be court was undecided. Whether the four districts would follow the federal system, with the supreme court settling conflicts among the districts, was a matter then being discussed among the bar, and in the ongoing campaigns to elect the first court of appeals judges. The answer to this question would implement the statewide development of

the law, a primary purpose of the supreme court. *State v. Mosley,* 102 Wis. 2d 636, 665, 307 N.W.2d 200, 216 (1981). *In re Court of Appeals* answered that question, and several others, so that planning for the new court could be done in time for its August 1, 1978 starting date. It is in this context that the supreme court noted that a published decision of any court of appeals panel has binding effect on all panels, a concept also found in sec. 752.41(2), Stats. In that context, it is not a necessary conclusion that a court of appeals panel does not have the power to overrule the precedent found in a previously published opinion.

Nor do I think that overruling erroneous past precedent would become everyday fare for the court of appeals. During the time that the court considered that it could correct its own errors, it did so, but on a very limited basis. *See State v. Marty,* 137 Wis. 2d 352, 362-63 n.1, 404 N.W.2d 120, 124-25 n.1 (Ct. App. 1987) (previous court of appeals opinion overruled due to conflict with later United States Supreme Court opinion). In *Gottlieb v. City of Milwaukee,* 33 Wis. 2d 408, 431-32, 147 N.W.2d 633, 645 (1967), the court explained the reluctance with which courts depart from the rule of *stare decisis. Prah v. Maretti,* 108 Wis. 2d 223, 238 n.12, 321 N.W.2d 182, 190 n.12 (1982), compiled several cases which noted that change was possible within that rule. More recently, the Supreme Court has discussed the nature of the doctrine of *stare decisis.* In *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. —, 120 L. Ed. 2d 674, 699-709 (1992), a plurality of the Court extensively examined the doctrine and concluded that a prior case would not be overruled. Though *Casey's* adherence to precedent was the result of factors not present in court of appeals cases, the

principle that *stare decisis* is a substantial disincentive to change is applicable to any court.

The responses of panels to a perceived inability to overrule erroneous past precedent have been varied. In *Ranft*, 163 Wis. 2d at 299-300 n.7, 471 N.W.2d at 260-61 n.7, we concluded that we must perpetuate past errors. Another response has been to artificially limit the erroneous holding. "This rule holds only of redheaded Walpoles in pale magenta Buick cars." K. LLEWELLYN, THE BRAMBLE BUSH 66-69 (1960), *reprinted in* R. ALDISERT, THE JUDICIAL PROCESS 820 (1976). An example of this response is *In re L.S.G.*, 170 Wis. 2d 231, 237-38, 487 N.W.2d 644, 646 (Ct. App. 1992). In *L.S.G.*, we distinguished the holding in a prior case because the issue of paternity was raised in a divorce case rather than a paternity case. Another response is to acknowledge the existence of prior cases, but not follow their holdings. This case is an example of that response. I am not comfortable with any of these responses.

Using this case as an example, it is first necessary to determine why the majority concluded that sec. 895.52, Stats., is inapplicable to these facts. The majority's reasoning is found in one sentence: "Because his mother was not engaged in a recreational activity, neither was David." Majority op. at 580. It is undisputed that David's mother and Walter Hadden were both at the pond. Therefore, the mother's intent is the sole reason why the majority concluded that David was not engaging in a recreational activity.

But in *Nelson v. Schreiner,* 161 Wis. 2d 798, 802, 469 N.W.2d 214, 216-17 (Ct. App. 1991), we also faced the problem of a very young child injured while accompanying another. In *Nelson,* Jowe Nelson, twenty-one months old, accompanied Jan Schreiner to a campground, where Jowe was burned in a campfire.

Schreiner is described as Jowe's "putative" father, but the briefs in *Nelson* make clear that Schreiner's only relationship to the child was a previous relationship with the child's mother. Jowe's guardian ad litem argued that because Jowe could not form the intent to engage in recreational activity, sec. 895.52(2)(a), Stats., did not apply to her. We held otherwise, concluding that the nature of the activity controlled.

*Nelson* was not the first case to consider the appropriate test to determine whether an injured person was engaged in a recreational activity. In *Silingo v. Village of Mukwonago,* 156 Wis. 2d 536, 544, 458 N.W.2d 379, 382 (Ct. App. 1990), we concluded that the goal of sec. 895.52, Stats., was not served by making the test for "recreational activity" subjective. We said:

> Instead, we adopt an objective test which requires that *all social and economic aspects* of the activity be examined. Relevant considerations on this question include, without limitation, the intrinsic nature of the activity, the type of service or commodity offered to the public, and the activity's purpose and consequence. While this approach does not preclude consideration of the user's subjective assessment of the activity, such assessment is not controlling.

*Id.* at 544, 458 N.W.2d at 382-83 (emphasis in original).

Thus in *Nelson,* we followed *Silingo,* noting: "Actions whose intrinsic nature are recreational and are conducted at a public facility or service dedicated to exercise, relaxation or pleasure may be recreational activities without further proof of the actor's mental purpose." 161 Wis. 2d at 802, 469 N.W.2d at 216-17. We concluded: "[Jowe] accompanied her putative father, whose avowed purpose was camping and other

recreation. The intrinsic nature of the child's playful activities and the recreational nature of the camp facility objectively and irrefutably suggest conduct within the contemplation of the statute." *Id.* at 803, 469 N.W.2d at 217. The intent of Jowe's mother played no part in our opinion.

The issue is not, as the majority asserts, whether a person was carried to a recreational activity against his or her express will. In *Nelson,* we observed: "If young children are excluded from the limit of owners' liability because they cannot form the mental intent to engage in recreation, the statute is rendered largely ineffective." *Id.* at 802, 469 N.W.2d at 216. The majority, by focusing on the subjective intent of a parent, has avoided the real issue—whether sec. 895.52, Stats., immunizes the city of Janesville.

What the majority fails to acknowledge is that the child's relationship to the adult accompanying the child is not significant. In *Nelson,* the adult had no relationship to the child. The *activity* (camping) was the controlling factor. Here, the activity, observing a fishing hole, is recreational. That factor is what the legislature focused on when it stated its intent: "[T]he legislature intends that, where substantially similar circumstances *or activities* exist, this legislation should be liberally construed in favor of property owners to protect them from liability." Section 1, 1983 Wis. Act 418 (emphasis added).

Because the majority does not overtly overrule or withdraw the language from *Nelson* and *Silingo,* the conclusion reached by the publication committee, exemplified in *Ranft,* 163 Wis. 2d at 299-300 n.7, 471 N.W.2d at 260-61 n.7, is not violated. But the holdings of *Nelson* and *Silingo* are effectively overruled because the only relevant fact now is the subjective intent of the

child's parent. The majority has taken a factor, which we have clearly held to be non-controlling in *Silingo* and which was irrelevant in *Nelson*, and elevated it to a controlling factor. We now have a rule that when a child is injured while accompanying several persons, the subjective intent of the child's parent determines whether the child was engaging in a recreational activity. When, as often happens, a child accompanies two parents, the majority's holding suggests that the subjective intent of the less enthusiastic parent controls. One cannot reach that conclusion by following *Nelson* and *Silingo*.

When we distinguish cases based upon irrelevant factors, or ignore indistinguishable precedent, we foster uncertainty in the law and make it difficult for attorneys to give definitive advice to their clients. This encourages litigation, which may result in more opinions which further unsettle the law. If clarifying the law is progress, we may be heading backwards. I conclude that our recent perceived inability to correct erroneous past precedent is ill-advised.

There is another reason I dissent. The cases discussing sec. 895.52, Stats., generally recognize that the legislature has adopted an emphatic position of landowner immunity when injury occurs while a person is engaging in recreational activity. That position is found in a message to Wisconsin judges included in the preface to 1983 Wis. Act 418, the bill which enacted sec. 895.52. It reads:

> The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity

which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, this legislation should be liberally construed in favor of property owners to protect them from liability. The act is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act.

The majority has ignored the legislature's message and the decisions of this court which interpret sec. 895.52, Stats. The cases in which we have followed this statement of legislative intent are: *Kloes v. Eau Claire Cavalier Baseball Ass'n*, 170 Wis. 2d 77, 487 N.W.2d 77 (Ct. App. 1992); *Nelson v. Schreiner*, 161 Wis. 2d 798, 469 N.W.2d 214 (Ct. App. 1991); *Stann v. Waukesha County*, 161 Wis. 2d 808, 468 N.W.2d 775 (Ct. App. 1991); *Johnson v. City of Darlington*, 160 Wis. 2d 418, 466 N.W.2d 233 (Ct. App. 1991); *Kostroski v. County of Marathon*, 158 Wis. 2d 201, 462 N.W.2d 542 (Ct. App. 1990); *Wilson v. Waukesha County*, 157 Wis. 2d 790, 460 N.W.2d 830 (Ct. App. 1990); *Kruschke v. City of New Richmond*, 157 Wis. 2d 167, 458 N.W.2d 832 (Ct. App. 1990); *Moua v. Northern States Power Co.*, 157 Wis. 2d 177, 458 N.W.2d 836 (Ct. App. 1990); *Silingo v. Village of Mukwonago*, 156 Wis. 2d 536, 458 N.W.2d 379 (Ct. App. 1990); *Sauer v. Reliance Ins. Co.*, 152 Wis. 2d 234, 448 N.W.2d 256 (Ct. App. 1989); *Taylor v. City of Appleton*, 147 Wis. 2d 644, 433 N.W.2d 293 (Ct. App. 1988); and *Hall v. Turtle Lake Lions Club*, 146 Wis. 2d 486, 431 N.W.2d 696 (Ct. App. 1988). On only three occasions have we concluded that immunity does not exist. *See Mooney v. Royal Ins. Co. of America*, 164 Wis.

2d 516, 476 N.W.2d 287 (Ct. App. 1991); *Lee v. Elk Rod & Gun Club, Inc.*, 164 Wis. 2d 103, 473 N.W.2d 581 (Ct. App. 1991); *Douglas v. Dewey*, 154 Wis. 2d 451, 453 N.W.2d 500 (Ct. App. 1990).

The trial court in this case construed sec. 895.52, Stats., liberally in favor of property owners, as the legislature required it to do. Were I writing for the majority, I would affirm.