Donald and Deena DOUGLAS, and Julie Ann Douglas,
Plaintiffs-Appellants-Cross Respondents,

v.

Vernon DEWEY, d/b/a Rustic Resort, and
Threshermen's Mutual Insurance Co., a Wisconsin
insurance corporation, Defendants-Respondents-Cross
Appellants.†

Court of Appeals

*No. 86-2086. Submitted on briefs July 14, 1989.—Decided
January 25, 1990.*

(Also reported in 453 N.W.2d 500.)

† Petition to review dismissed.

452

For the plaintiffs-appellants-cross respondents the cause was submitted on the briefs of *Herrling, Clark, Hartzheim & Siddall, Ltd.* by *Michael S. Siddall* of Appleton.

For the defendants-respondents-cross appellants the cause was submitted on the brief of *Kaftan, Van Egeren, Gilson, Geimer & Gammeltoft, S.C.* by *Jeffrey J. Gilson* of Green Bay.

Before Eich, C.J., Dykman and Sundby, JJ.

SUNDBY, J.  This appeal involves application of sec. 895.52, Stats., Wisconsin's recreational activity immunity statute, to a recreational activity undertaken on privately-owned business property. In June 1984, Julie Ann Douglas was injured when she dove off Rustic Resort's dock into a shallow lake abutting the resort. In a special verdict, the jury found Rustic Resort's owner, Vernon Dewey, sixty-five percent negligent and Douglas thirty-five percent negligent and awarded Douglas substantial damages. The jury also found that during 1984 Dewey did not receive a monetary benefit of more than $500 from swimming activities at the resort. Because of the jury's finding, the trial court granted Dewey's motion to dismiss.

Douglas appeals from the judgment dismissing her complaint. Dewey cross-appeals. He requests that, if Douglas is granted a new trial, we determine that the safe-place statute is inapplicable, and that we order a new trial on the liability issue only. We reverse and remand the cause for a new trial of liability because the special verdict and the jury instructions contained errors which were prejudicial to Douglas. Because the remaining issues may affect the new trial, we address them.

We conclude that sec. 895.52, Stats. (Recreational activities; limitation of property owners' liability), applies to Rustic Resort; that the $500 limitation in sec. 895.52(6)(a) which determines whether Dewey is immune from liability is computed by aggregating all payments Dewey received for all recreational activities at Rustic Resort during 1984; that the trial court submitted to the jury an erroneous special verdict and erroneously instructed the jury as to the $500 limit; that the trial court did not abuse its discretion in admitting evidence that there had been no prior diving accidents from Rustic Resort's dock; and that the safe-place statute, sec. 101.11, Stats., may apply if Dewey is not immune from liability under sec. 895.52(2).

## BACKGROUND

Rustic Resort consists of five acres of land with 200 feet of lake frontage on Pine Lake, including a beach. Rustic Resort includes a mobile home park with forty-four spaces, a tavern, and a dock on the lake. Dewey collected $21,000 in 1984 from mobile home space rentals. Mobile home tenants and their guests pay no special charges for use, including swimming, of the lake facilities. A sign posted near the beach read: "Private beach and boat landing, Rustic Resort customers only. All others $1 paid at bar." Dewey, however, did not charge non-tenants for swimming but only for boat docking, which revenues aggregated $20 or less a year. Tavern customers used the lake facilities without charge.

On June 13, 1984, Douglas was visiting a mobile home tenant. She dove off the dock into shallow water and sustained severe injuries. She thereafter began this action.

## I.

### IMMUNITY UNDER SEC. 895.52, STATS.

Douglas argues that sec. 895.52, Stats., does not protect from liability the owner of a business which has recreational facilities as an integral part of the business. Dewey disagrees. Both parties review the legislative history of sec. 895.52. Resort to the legislative history of a statute is proper only if the statute is ambiguous. *Vultaggio v. General Motors Corp.*, 145 Wis. 2d 874, 890, 429 N.W.2d 93, 99 (Ct. App. 1988). We conclude that sec. 895.52 unambiguously applies to private property owners who are engaged in businesses which include recreational activities.

Section 895.52(2), Stats., provides:

(a)  Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1.  A duty to keep the property safe for recreational activities.

2.  A duty to inspect the property, except as provided under s. 23.115(2).

3.  A duty to give warning of an unsafe condition, use or activity on the property.

(b)  Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property or for any injury resulting from an attack by a wild animal.

Subsections (3), (4) and (5) do not apply.

Section 895.52(1), Stats., defines an owner as "[a] person . . . that owns . . . property" and a private prop-

457

erty owner as "any owner other than a governmental body or nonprofit organization." We conclude that these definitions unambiguously include Rustic Resort. Whether Dewey's liability to Douglas is limited by sec. 895.52(2) depends on whether the conditions of sec. 895.52(6)(a) existed when Douglas was injured.

Section 895.52(6), Stats., provides:

> Subsection (2) does not limit the liability of a private property owner or of an employe or agent of a private property owner whose property is used for a recreational activity if any of the following conditions exist:
>
> (a) The private property owner collects money, goods or services in payment for the use of the owner's property for the recreational activity during which the injury occurs, and the aggregate value of all payments received by the owner for the use of the owner's property for recreational activities during the year in which the injury occurs exceeds $500. The following do not constitute payment to a private property owner for the use of his or her property for a recreational activity:
>
> . . ..
> 2. An indirect nonpecuniary benefit to the private property owner or to the property that results from the recreational activity.

██

Immunity is the general intent of sec. 895.52, Stats. Sec. 895.52(2). A landowner is not immune, however, if two conditions exist. First, the owner collects money, goods or services in payment for the use of the owner's property for the recreational activity during which the injury occurs. Second, the aggregate value of all payments received by the owner for the use of his or her

property for recreational activities during the year in which the injury occurs exceeds $500.

Dewey argues that he did not collect money, goods or services from Douglas for the use of Pine Lake and Rustic Resort's dock for swimming. Douglas contends, however, that indirect pecuniary benefits which Dewey derived from swimming activities must be considered as payment for the use of Dewey's property. We agree.

Section 895.52(6)(a)2, Stats., excludes an "indirect nonpecuniary benefit" as payment for the use of an owner's property for recreational activities. The corollary of the exclusion of indirect nonpecuniary benefits would appear to be the inclusion of indirect pecuniary benefits. A reasonably well-informed person could, however, conclude that this corollary does not necessarily follow. Such a person could reasonably argue that the exclusion of indirect nonpecuniary benefits was an exercise of legislative caution and not an affirmation that indirect pecuniary benefits shall be included as payments under sec. 895.52(6)(a). An equally well-informed person could reasonably conclude that the legislature intended to include indirect pecuniary benefits as payments under sec. 895.52(6)(a). Such a person would argue that if the legislature intended otherwise, it could have simply excluded all indirect benefits as payments. Section 895.52(6)(a) is, therefore, ambiguous in this respect. *State v. Vonesh,* 135 Wis. 2d 477, 480, 401 N.W.2d 170, 172 (Ct. App. 1986). We look to the legislative history of sec. 895.52, Stats., and its predecessor statute, sec. 29.68, Stats., for guidance. *Vonesh,* 135 Wis. 2d at 483, 401 N.W.2d at 173. The history of sec. 29.68 is particularly helpful because the statute has been construed a number of times, and very pertinently, by the Wisconsin Supreme Court.

Section 895.52, Stats., was created by 1983 Wis. Act 418. It replaced sec. 29.68, Stats. The legislative history of sec. 29.68 was thoroughly reviewed in *Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 317 N.W.2d 468 (1982), *Wirth v. Ehly,* 93 Wis. 2d 433, 287 N.W.2d 140 (1980), and *Copeland v. Larson,* 46 Wis. 2d 337, 174 N.W.2d 745 (1970).

Under sec. 29.68, Stats. (1963), to recover, a recreational entrant injured as a result of the landowner's negligence was required to show that he or she paid "valuable consideration" to the landowner for the use of the premises. A law review note discussing sec. 29.68 suggested that "valuable consideration" could be given a broad construction if the trend of the law of landowner's liability were followed. Note, *Torts-Statutes-Liability of Landowner to Persons Entering for Recreational Purposes,* 1964 Wis. L. Rev. 705, 707. The author concluded, however, that the legislative history of sec. 29.68 suggested a narrow reading of "valuable consideration." *Id.* at 709.

In *Copeland,* the court adopted a strict construction of sec. 29.68, Stats., because the statute was in derogation of the common law. The court, therefore, gave a broad construction to "valuable consideration." 46 Wis. 2d at 347, 174 N.W.2d at 750. The court said that valuable consideration "may be the conferring of a benefit upon the landowner or a mutuality of interest of the landowner and the entrant." *Id.* Thus, under the court's construction of sec. 29.68, a pecuniary benefit to the owner was not a requisite to liability.

The *Copeland* court noted that at common law, a landowner's liability to an invitee was predicated on one of two theories: the "economic-benefit" theory or the "invitation" theory. *Copeland,* 46 Wis. 2d at 342, 174

N.W.2d at 748. The economic-benefit theory imposes obligations upon the owner when he or she receives some actual or potential benefit from the entry of another. *Id.* The invitation theory imposes a duty upon an owner who holds out his or her premises as suitable for the purpose for which the visitor entered. The court concluded that Wisconsin had adopted the invitation theory. *Id.* The court noted a "growing tendency" of courts to expand the duties of landowners by enlarging what constitutes an economic benefit or adopting a broader test of the invitation theory.[1] *Id.* at 343, 174 N.W.2d at 748-49.

We conclude that, in sec. 895.52, Stats., the legislature abandoned the invitation theory and adopted a pecuniary-benefit approach, with the caveat that the pecuniary benefit to the owner for the use of his or her property must be actual, not merely potential. Section 1 of 1983 Wis. Act 418 states in part: "The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities *under circumstances in which the owner does not derive more than a minimal pecuniary benefit.*" (Emphasis added.) Section 895.52(6)(a) requires a pecuniary benefit in the form of money, goods or services.

We also conclude that in sec. 895.52, Stats., the legislature intended to overrule *Copeland*'s holding that a landowner is liable if there is any benefit to the landowner from the visitor's entry or there is a mutuality of interest between the owner and the visitor. Section 1 of

---

[1] Wisconsin enlarged the duties of landowners when the court abolished the distinction between the duty owed by a land occupier to licensees and the duty owed to invitees. *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975).

1983 Wis. Act 418 provides in part: "The act [1983 Wis. Act 418] is intended to overrule any previous Wisconsin supreme court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act."

It is significant that in sec. 895.52, Stats., the legislature did not retain "valuable consideration" as the yardstick to gauge immunity or liability. Plainly, the legislature did not wish to expand the landowner's liability for the recreational use of his or her land as the *Copeland* court's construction of "valuable consideration" required.

We conclude, however, that the legislature did not intend to exclude from consideration in determining liability or immunity indirect *pecuniary* benefits to the landowner from the use of his or her property for recreational activities. The tenor of sec. 895.52, Stats., which finds specific expression in sec. 1 of 1983 Wis. Act 418, is to accord immunity to gratuitous uses for recreational purposes and to find liability for profit-making uses, whether the profit results from direct charges for the recreational activity, or indirectly, from a pecuniary benefit accruing to the owner from the recreational activity. A contrary construction would lead to absurd and unreasonable results. For example, a hotel which made a swimming pool available to its guests without fee would be immune from liability for injuries resulting from its negligent construction, maintenance or operation of the pool. We should avoid a construction of sec. 895.52 which leads to such a result. *Currie v. Schwalbach*, 132 Wis. 2d 29, 42, 390 N.W. 2d 575, 580 (Ct. App. 1986), *aff'd,* 139 Wis. 2d 544, 407 N.W.2d 862 (1987) ("Absurd and unreasonable constructions and applications of statutes are to be avoided."). We therefore conclude that the

legislature intended to include indirect pecuniary benefits as payments to the property owner for the use of his or her property for a recreational activity.

## II.

## VERDICT AND INSTRUCTIONS: WAIVER OF ERROR

### A.

Douglas contends that she was prejudiced by the trial court's submission of an erroneous special verdict. We agree. The trial court interpreted sec. 895.52(6)(a), Stats., to require, as a condition of Dewey's liability, a finding that during 1984 Dewey received more than $500 from swimming activities at Rustic Resort. Accordingly, the court submitted the following question to the jury: "1. Did the Defendant, Vernon Dewey, receive a monetary benefit of more than $500 during the year of 1984 from swimming activities at the Rustic Resort?" Because the jury answered this question, "No," the trial court granted Dewey's motion to dismiss.

Douglas objected to the special verdict question as too limited. She requested that the question inquire as to all water recreation activities. We do not express an opinion as to whether this was the correct inquiry, nor do we mandate a special verdict question or questions, but we do agree that the special verdict was too limited, and did not inquire of the jury a finding upon which a proper verdict and judgment could be based. The special verdict cannot stand.

463

## B.

For the reasons expressed in Part I, we conclude that the trial court erroneously instructed the jury that it could not consider indirect benefits Dewey received from recreational activities other than swimming undertaken by Rustic Resort's patrons.[2]

## C.

Dewey argues that if there was any error in the special verdict or the instructions, Douglas waived the error. He claims that at the instruction and verdict conference, Douglas made no specific objection to question 1. Dewey represents that the trial court, "with very slight modification," gave the instruction as to question 1 requested by Douglas. Dewey contends that therefore Douglas waived any error in the proposed instructions or verdict. Sec. 805.13(3), Stats.

## (1)

The record of the instruction and verdict conference does not support waiver. Further, the "very slight modification" in fact changed the whole thrust of the case. In the conference the following colloquy occurred between the court and Douglas's counsel:

---

[2]The trial court instructed the jury as follows:

In answering . . . question [No. 1] you may take into consideration the entire resort operation and the earnings of the entire resort. You must, however, be satisfied that at least $500 of such . . . earnings are a direct result of the swimming activities before you may answer the question yes. *Indirect benefits that may result from the swimming activity should not be considered in your consideration of this question.* [Emphasis added.]

464

THE COURT: We're in chambers with counsel, and I have handed to them proposed verdicts, verdict forms. Any objections you wish to note for the record?—I believe I adopted the Plaintiff's verbatim except for adding question number one and moving everything back.

[COUNSEL]: I object to question number one. I think this is a matter of law for the court to decide and not an issue of fact. I further point out that the question is so limited in its inquiry, swimming activities as opposed to all water recreation activities, as to compel the jury to address solely that issue of swimming, which I think is inappropriate. It seems that the entire water recreational area is the matter of inquiry. I hope in the instruction you'll make it clear that Vernon Dewey includes all income from the Rustic Resort, because he and his wife own it and she in fact receives some of the money, and I just don't want there to be any confusion there. I'm not suggesting a verdict should be changed, but in the instruction you should tell them any money received by the Rustic Resort, remember the son was operating the bar, the father owned it, I don't want the jury to get the impression if the son got the money it doesn't count or the wife gets the money it doesn't count.

THE COURT: I intend to give your requested instruction on question number one and it refers to the income of Rustic Resort.

[COUNSEL]: The question doesn't. You might simply say they should consider all the income for Rustic Resort in answering that question, and I think I may have said something like that, from the entire operation.

Thus, counsel raised three objections to question 1. First, that whether Dewey received payments exceeding

$500 was a question of law for the court. Counsel was in error. Whether Dewey received payments exceeding $500 for use of his property for recreational activities was a question of fact for the jury. Second, counsel objected that the question was too narrow. We agree. The question should not have been limited to monetary benefits derived from swimming activities. Third, counsel objected that the question was limited to monetary benefits received by Vernon Dewey. This objection was met by the instructions.

(2)

With respect to the instruction as to question 1, the record does not contain Douglas's requested instruction. Dewey's counsel, however, set forth the substance of Douglas's requested instruction in his presentation to the court at the hearing on motions after verdict. He represented to the court as follows:

> Another thing I would point out is that my recollection is the instruction that was given was an instruction prepared by [Douglas's counsel] and had in his own handwriting and given to the Judge's clerk for typing at the time of our verdict conference, and that the language used by the Court was in fact the language submitted to the Court by [Douglas's counsel] word for word *except for the change of swimming facility for waterfront recreation area.* (Emphasis added.)

The trial court confirmed counsel's recollection of what happened at the instruction and verdict conference. The court stated:

> Well, [counsel] is correct . . . that this instruction was drafted by [Douglas's counsel] in his own handwriting and was typed up by my secretaries.

However, [he] objected to the Court asking the question [No. 1] in the first place. However, he did provide this instruction for the Court to give and the Court did adopt it, changing only the words . . . waterfront activities to swimming activities . . .. The words swimming activities were my choice, not his.

Simply submitting a requested instruction which is rejected is not, however, enough, under sec. 805.13(3), Stats., to preserve an objection to the instruction actually given. "A party's mere submission of alternative instructions without a particularized objection on the record to the instructions proposed by the court cannot provide a basis for raising the erroneous instruction on appeal as a matter of right." *In Interest of C.E.W.*, 124 Wis. 2d 47, 54, 368 N.W.2d 47, 51 (1985). Here, however, in addition to submitting a requested instruction, counsel specifically objected to the special verdict question to which the instruction related. "The purpose of the rule requiring that the grounds for objection be stated on the record is to afford the opposing party and the trial court an opportunity to correct the error and to afford appellate review of the grounds for the objection." *Air Wisconsin, Inc. v. North Cent. Airlines, Inc.*, 98 Wis. 2d 301, 311, 296 N.W.2d 749, 753 (1980). The record of the instruction and verdict conference shows that Dewey's counsel and the trial court were well aware of Douglas's position.

Following the statement of the position of each party, the trial court ruled as follows: "I do believe that the statute requires that the economic benefit be derived from the activity that [Douglas] was participating in, which was swimming activities. . . . I don't think it includes boating or any other recreational activity at the resort."

467

It was unnecessary for Douglas to restate her objections to the proposed instruction as to question 1. That instruction properly instructed the jury under the court's view of the law. Douglas had attempted, without success, to dissuade the trial court from its position with respect to the law. Any further objection by counsel might well have been regarded by the trial court as overzealous advocacy.

We conclude that the purposes of sec. 805.13(3), Stats., were satisfied. Douglas's objection "[brought] into focus the nature of the alleged error." *Air Wisconsin,* 98 Wis. 2d at 311, 296 N.W.2d at 753. We therefore conclude that Douglas preserved her objections to special verdict question 1 and the instruction as to that question.

### III.

### TESTIMONY AS TO LACK OF PRIOR ACCIDENTS

David Dewey, Vernon's son, was allowed to testify that in all the time he had assisted in running the resort there had been no problem with prior diving accidents. Douglas contends that the trial court abused its discretion in permitting this testimony because it was not relevant, or, if relevant, its relevance was outweighed by its prejudicial effect.

On motions after verdict, the trial court stated that it had allowed such testimony because the safe-place statute was an issue and, under common-law negligence, the evidence was admissible because Douglas's counsel aggressively questioned Dewey on what he should have known, what should have been obvious to him, and

468

whether he should not have been concerned about the safety of persons using Pine Lake.

In the context of the trial, we conclude that the trial court did not abuse its discretion in allowing David Dewey's testimony. A trial court has considerable discretion in determining whether evidence is relevant to the issue in the case. *Chart v. General Motors Corp.,* 80 Wis. 2d 91, 102, 258 N.W.2d 680, 684 (1977).

Again, in the context of the trial, we conclude that the trial court did not abuse its discretion when it determined that the probative value of David Dewey's testimony was not substantially outweighed by danger of unfair prejudice, and refused to exclude such evidence under sec. 904.03, Stats. The test under sec. 904.03 is not whether evidence is prejudicial but whether it is unfairly prejudicial. David Dewey's testimony may have prejudiced Douglas's case because it tended to refute Douglas's argument that Dewey should have known that it was unsafe to dive from Rustic Resort's dock and should have warned Douglas of the unsafe condition. We see nothing unfair in such testimony.

## IV.

## THE SAFE-PLACE STATUTE

The trial court gave the pattern safe-place statute instructions, Wis J I—Civil 1900.4 and 1902. In his cross-appeal, Dewey contends that this was prejudicial error. He claims that sec. 895.52(7), Stats., makes the safe-place statute inapplicable where a recreational activity is involved. We disagree.

Section 895.52(7), Stats., provides:

Except as expressly provided in this section, nothing in this section or s. 101.11 nor the common law attractive nuisance doctrine creates any duty of care or ground of liability toward any person who uses another's property for a recreational activity.

Prior to sec. 895.52(7), the safe-place statute, sec. 101.11, Stats., was applied in another shallow-water diving accident case, *Gould v. Allstar Ins. Co.,* 59 Wis. 2d 355, 362, 208 N.W.2d 388, 391–92 (1973). Gould was injured when he dove into shallow water from a commercial pier. Gould was found to be a "frequenter" at a place of employment who was protected by the safe-place statute.

Whether Douglas was a frequenter at a place of employment within the meaning of sec. 101.11(1), Stats., is not an issue in this case. The only question presented is whether sec. 895.52(7), Stats., has made the safe-place statute inapplicable to private property used for recreational activities. An owner of private property is relieved of a duty to keep his or her property "safe for recreational activities," sec. 895.52(2)(a)1, only if a disqualifying condition under sec. 895.52(6) does not exist. We conclude, therefore, that if a private property owner is immune from liability under sec. 895.52(2), the owner is not subject to liability under the safe-place statute. If, however, the immunity of sec. 895.52(2) is negated by sec. 895.52(6), the safe-place statute may apply to premises used for recreational activities.

*By the Court.*—Judgment reversed and cause remanded for a new trial of liability.