STARK, P.J.
¶ 1 Patrick and Lisa Humfeld (collectively, Humfeld) appeal a summary judgment granted in favor of State Farm Fire and Casualty Company and the Estate of John Curtis Marsh, Sr. The circuit court concluded, as a matter of law, that Humfeld's claims were barred by the recreational immunity statute, WIS. STAT. § 895.52 (2015-16).[1] On appeal, Humfeld contends there are genuine issues of material fact as to whether the social guest exception and the profit exception to recreational immunity apply. We conclude the undisputed facts demonstrate that neither of those exceptions is applicable. We therefore affirm the judgment dismissing Humfeld's claims.
BACKGROUND
¶ 2 This appeal stems from an incident that occurred on November 1, 2014. Humfeld claims that, at approximately 8:00 a.m. on that date, David Devine accidentally shot Humfeld in the head while both men were hunting on property owned by John Curtis Marsh, Sr.[2] In February 2017, Humfeld filed suit against State Farm-Marsh's liability insurer-alleging Marsh was negligent by, among other things, failing to properly manage and monitor the individuals hunting on his property, failing to confirm the number and whereabouts of the individuals present on the property, and failing to disclose to individuals hunting on the property the existence and/or location of other hunters.
¶ 3 State Farm moved for summary judgment, arguing recreational immunity barred Humfeld's claims because Humfeld was engaged in a recreational activity at the time of the shooting. State Farm further argued the undisputed facts demonstrated that the social guest and profit exceptions to recreational immunity did not apply. In response, Humfeld asserted there were genuine issues of material fact regarding the applicability of both of those exceptions.[3]
¶ 4 The circuit court agreed with State Farm that the undisputed facts demonstrated that neither the social guest exception nor the profit exception was applicable. The court therefore granted summary judgment in favor of State Farm and dismissed Humfeld's claims. Humfeld now appeals. Additional facts are included below.
DISCUSSION
¶ 5 We independently review a grant of summary judgment, using the same methodology as the circuit court. Hardy v. Hoefferle , 2007 WI App 264, ¶ 6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).
¶ 6 In this case, State Farm contends the circuit court properly granted its summary judgment motion because the undisputed facts establish that the recreational immunity statute bars Humfeld's claims. "Recreational immunity under WIS. STAT. § 895.52 is a defense that may entitle a moving party to summary judgment." Milton v. Washburn Cty. , 2011 WI App 48, ¶ 7, 332 Wis. 2d 319, 797 N.W.2d 924. Whether the recreational immunity statute applies in a given case is a question of law that we review independently. Id.
¶ 7 The recreational immunity statute was enacted "to encourage property owners to open their lands for recreational activities by removing a property user's potential cause of action against a property owner's alleged negligence." Linville v. City of Janesville , 184 Wis. 2d 705, 715, 516 N.W.2d 427 (1994). The statute provides that, subject to certain exceptions, "no owner ... is liable for the death of, any injury to, or any death or injury caused by, a person engaging in a recreational activity on the owner's property." WIS. STAT. § 895.52(2)(b). Here, it is undisputed that Humfeld was injured while engaging in a recreational activity-i.e., hunting, see § 895.52(1)(g) -on Marsh's property. The only disputed issue is whether two of the statutory exceptions to recreational immunity-the social guest exception and the profit exception-apply. For the reasons explained below, we conclude the undisputed facts establish that neither exception is applicable.
I. The social guest exception
¶ 8 Under the social guest exception, recreational immunity does not apply where "[t]he death or injury occurs on property owned by a private property owner to a social guest who has been expressly and individually invited by the private property owner for the specific occasion during which the death or injury occurs." WIS. STAT. § 895.52(6)(d).[4] The legislature created this exception in 1984, in response to our supreme court's decision in LePoidevin v. Wilson , 111 Wis. 2d 116, 330 N.W.2d 555 (1983). See Urban v. Grasser , 2001 WI 63, ¶¶ 34-35, 243 Wis. 2d 673, 627 N.W.2d 511.
¶ 9 The plaintiff in LePoidevin was injured after diving headfirst into shallow water from a pier on the defendant's property. LePoidevin , 111 Wis. 2d at 118-19. The defendant's son had specifically invited the plaintiff onto the defendant's property that day to swim. Id. On appeal, the defendant contended he was immune from suit under a prior version of the recreational immunity statute. Id. at 126. Our supreme court disagreed, reasoning the recreational immunity statute should be "construed strictly to accomplish its legislative purpose"-that is, limiting the liability of private landowners who open their lands to the public. Id. at 130-31. The court explained:
[The defendant's] use of the land in this case does not seem to be the type of use the statute was designed to protect or encourage. [The defendant] has not opened his land to the "public" generally nor has he given permission to one or more members of the "public" to use the land for recreational purposes. He opened his land to a social guest who was invited onto the land. Granting the protection afforded by [the recreational immunity statute] to a landowner who invites a friend of the family to the summer cottage as a guest to join the family in water sports does not foster the purpose of [the statute] to encourage landowners to make land and water areas available to the public for recreational use.
Id. at 131-32.
¶ 10 The LePoidevin court conceded it was "difficult to draw a bright line between a landowner who grants permission to persons to use the premises for recreational purposes and is protected by [recreational immunity] and a landowner who invites a person to use the premises for recreational purposes and is not protected by [recreational immunity]." Id. at 132. Nonetheless, the court stated it was "not convinced" the legislature intended recreational immunity to apply "when the landowner engaged in active negligence toward the plaintiff, a social guest." Id.
¶ 11 Following LePoidevin , the legislature enacted the social guest exception "to ensure that a property owner does not gain immunity under circumstances similar to LePoidevin ." Urban , 243 Wis. 2d 673, ¶ 35. Since then, our supreme court has repeatedly emphasized that the social guest exception abrogates immunity for injuries to "social guests"-i.e., those who are expressly and individually invited onto an owner's property-but not for injuries to "permissive entrants." For instance, in a case involving the drowning deaths of two users of a public beach, the court distinguished LePoidevin on the basis that the decedents were "permitted entrants on land for recreational activities, not invited social guests." Ervin v. City of Kenosha , 159 Wis. 2d 464, 475, 464 N.W.2d 654 (1991).
¶ 12 The supreme court again emphasized this distinction in Urban . There, the plaintiff (Urban) had purchased a boat from the defendant's father (Paul). Urban , 243 Wis. 2d 673, ¶¶ 1, 3. Because Urban needed additional time to find a place to dock the boat, Paul agreed to allow Urban to continue docking the boat on Paul's property temporarily. Id. In order to access the boat, Urban had to walk across property owned by the defendant-Paul's son, David. Id. , ¶ 4. Paul had an easement over David's property for ingress and egress, and he gave Urban permission to use that easement in order to access the boat. Id. , ¶ 1. Urban was injured while walking across David's property. Id. , ¶ 8.
¶ 13 Our supreme court concluded the social guest exception to recreational immunity did not apply on these facts. Id. , ¶¶ 33-35. The court reasoned that, while the injured party in LePoidevin was "a social guest who was expressly and individually invited onto the property," Urban was "granted permission by Paul to use the property." Urban , 243 Wis. 2d 673, ¶ 35. The court explained, "Such permissive entrants are outside the ambit of [the social guest] exception." Id.
¶ 14 Conversely, in Waters v. Pertzborn , 2001 WI 62, 243 Wis. 2d 703, 627 N.W.2d 497, the court concluded there was a genuine issue of material fact as to whether the social guest exception applied. Christopher Waters, a ten-year-old boy, was hit by a car while sledding at the home of his friend, eleven-year-old Kathleen Pertzborn. Id. , ¶¶ 4-7. During his deposition, Christopher testified he and Kathleen were initially playing together at his house, but Kathleen then "brought him over to her house, telling him 'let's go over to my house or something.' " Id. , ¶ 4. On appeal, our supreme court noted that, under the social guest exception, "invited social guests, unlike permitted entrants, may proceed against a landowner under certain circumstances when they are injured while engaged in a recreational activity." Id. , ¶ 40. The court concluded Christopher's deposition testimony was "sufficient to establish a question of fact as to whether Christopher was 'expressly and individually invited' to the Pertzborns." Id. , ¶ 44.
¶ 15 Here, State Farm argues the undisputed facts establish that Humfeld was a permissive entrant on Marsh's property on the day he was injured, rather than a social guest. State Farm relies on Humfeld's deposition testimony to support its position. During his deposition in June 2017, Humfeld testified that his son Mitchell worked for Marsh and had been hunting on Marsh's property for "some time" before Humfeld began hunting there. Humfeld would stop at Marsh's property "periodically" to talk to his son, and on one such occasion, Marsh "asked [Humfeld] if [he] wanted to hunt out there." Humfeld responded that he did, "[a]s a family, you know, a family thing."
¶ 16 Humfeld further testified that he had been hunting on Marsh's property for five to six years at the time of the incident giving rise to this case. For that entire time period-including the day of the incident-the "understanding" was that Humfeld could hunt on Marsh's property "anytime [he] want[ed]." Humfeld testified he had "discretion" to "show[ ] up anytime [he] wanted," and he could "leave anytime [he] wanted." On the day of the incident, Humfeld and his son Dylan arrived at Marsh's property at about 5:30 a.m. Upon their arrival, they "quietly got [their] stuff out, got [their] gear on ... and then ... walked across the cow yard and went off to the hunting area" without first speaking to Marsh.
¶ 17 State Farm argues the above testimony indisputably demonstrates that Humfeld was not "specifically on Marsh's property ... at [Marsh's] behest" on the day he was injured. In response, Humfeld concedes his deposition testimony shows that he was "a permissive entrant on Marsh's property for several years leading up to the shooting incident." However, Humfeld argues an affidavit that he filed in October 2017, in opposition to State Farm's summary judgment motion, raises a factual issue regarding whether he was specifically invited to hunt on Marsh's property on the day of his injury.
¶ 18 Humfeld's October 2017 affidavit is largely consistent with his deposition testimony. However, the affidavit contains several factual assertions to which Humfeld did not testify during his deposition. For instance, Humfeld averred that, during the five to six years before he was injured, it was "not necessary" for him to stop at Marsh's residence "early in the morning to ask for permission from Marsh to hunt." Humfeld explained:
Marsh had instructed me, soon after he initially invited me to hunt on the Marsh Property that, if I was hunting during the early morning hours, I should attempt to walk past the house and in the immediate vicinity of the house as quietly as possible when entering the woods so as not to arouse the Marsh dogs and cause unnecessary barking.
¶ 19 Humfeld further averred in his affidavit that, on many occasions before his injury, Marsh would "phone [him] and ask [him] to come out and hunt." Humfeld explained, "I believe his interest was simply to socialize following hunting. I would typically socialize with Marsh either before or after my bow hunting trips on the Marsh Property and, on some occasions, before and after." Humfeld also averred that, in addition to bow hunting, he and his sons would hunt with Marsh's family during the gun deer season, which typically occurs during the third week of November. Humfeld averred that Marsh invited him to Marsh's property each year "to meet and discuss the plans associated with the deer gun season."
¶ 20 Humfeld also provided additional detail in his affidavit about the events preceding his injury. He averred that, on October 31, 2014-the day before he was injured-he had hunted with a crossbow on Marsh's property. He asserted he was not "invited" to Marsh's property that day but instead hunted there "pursuant to the consent provided to [him] by Marsh." When he arrived at Marsh's property on October 31, he knocked on the door of Marsh's residence, but no one answered. Humfeld "looked around for Marsh and could not find him," so he then "proceeded into the woods to hunt with [Marsh's] consent."
¶ 21 Humfeld averred that, when he returned to his car after he finished hunting on October 31, he again knocked on the door of Marsh's residence. Marsh answered the door and invited Humfeld into the house. They sat in the kitchen talking, and during that conversation "Marsh asked [Humfeld] if [he] would be back out in the morning ... to hunt." Humfeld believed that Marsh was lonely and wanted to talk. As Humfeld was preparing to leave Marsh's residence, Marsh stated, in reference to the upcoming gun deer season, "Why don't you come out and hunt in the morning so that we can start making plans?" When Humfeld arrived at home, he told his wife that he "thought Marsh was lonely and that he wanted to talk, and that he had invited [Humfeld] out to hunt so that [they] could spend more time at the kitchen table talking."
¶ 22 Humfeld contends these averments are sufficient to create a genuine issue of material fact as to whether he was expressly and individually invited to hunt on Marsh's property on the day of his injury, which would have made him a social guest, rather than a permissive entrant. In response, State Farm argues we should refuse to consider Humfeld's affidavit based on the sham affidavit rule, which precludes a party from "creat[ing] ... genuine issues of fact on summary judgment by the submission of an affidavit that directly contradicts earlier deposition testimony." See Yahnke v. Carson , 2000 WI 74, ¶ 15, 236 Wis. 2d 257, 613 N.W.2d 102. The circuit court concluded the sham affidavit rule applied because Humfeld's averments regarding an express invitation by Marsh on October 31 were directly contrary to Humfeld's deposition testimony, which did not mention an express invitation. The court further concluded that, without Humfeld's affidavit, the undisputed facts established that Humfeld was a permissive entrant, rather than a social guest, because Humfeld "was free to come out to Marsh's property any time to hunt."
¶ 23 We do not agree that the sham affidavit rule is applicable here. At his deposition, Humfeld testified, generally, that he had permission to hunt on Marsh's property anytime he wanted. However, Humfeld was not specifically asked during his deposition whether he had been expressly invited to hunt on Marsh's property on the day of his injury. Accordingly, he did not testify one way or the other regarding that issue. As a result, Humfeld's subsequent averment that Marsh expressly invited him to hunt on Marsh's property on the day in question did not "directly contradict[ ]" his prior deposition testimony. See id. The sham affidavit rule is therefore inapplicable.
¶ 24 Nonetheless, even considering Humfeld's affidavit, we conclude Humfeld has failed to raise a genuine issue of material fact as to whether the social guest exception to recreational immunity applies.[5] Humfeld's deposition testimony and affidavit both establish that, during the five-to-six-year period preceding his injury, Humfeld had general permission to enter Marsh's land to hunt anytime Humfeld wanted to do so. Humfeld did not need special permission or an express invitation to hunt on Marsh's property on any specific day. When Humfeld arrived on Marsh's property, he was not required to inform Marsh of his presence or ask Marsh whether he could hunt that day. These undisputed facts clearly establish that, for the five-to-six-year period preceding Humfeld's injury, Humfeld was a permissive entrant on Marsh's property for the purpose of hunting there.
¶ 25 Humfeld's affidavit indicates that, on October 31, 2014, Marsh specifically invited Humfeld to hunt on Marsh's property the following day. Based on that averment, Humfeld argues his affidavit would permit a reasonable juror to conclude that he was both a social guest and a permissive entrant on the day he was injured. He argues there is no case law holding that "being a permissive entrant trumps social guest status." He therefore argues there is a disputed issue of material fact as to whether the social guest exception applies.
¶ 26 We disagree. Humfeld's position is contrary to the purpose of the social guest exception, which was enacted "to ensure that a property owner does not gain immunity under circumstances similar to LePoidevin "-that is, circumstances where the injured person was expressly and individually invited onto the owner's property. Urban , 243 Wis. 2d 673, ¶ 35. The LePoidevin court explained that granting recreational immunity to a landowner who expressly invites a person onto his or her property for a specific occasion "does not foster the purpose of [the recreational immunity statute] to encourage landowners to make land and water areas available to the public for recreational use." LePoidevin , 111 Wis. 2d at 131-32. Stated differently, inviting a specific person onto one's property on a specific occasion is not tantamount to opening one's property to the public for recreational use, and a landowner who does only the former is therefore not entitled to the protection afforded by recreational immunity.
¶ 27 Here, however, the undisputed facts show that Marsh did open his land to one or more members of the public for hunting. Humfeld's deposition testimony and affidavit confirm that Humfeld had general permission to hunt on Marsh's property and did not need to obtain specific permission from Marsh before doing so on a particular occasion. In fact, as previously instructed, on the date of the incident Humfeld and his son entered the property early in the morning, "quietly got [their] stuff out, got [their] gear on ... and then ... walked across the cow yard and went off to the hunting area" without first speaking to Marsh. That Marsh specifically invited Humfeld to hunt on his property on the day Humfeld was injured does not change the fact that Marsh also, more generally, held his property open to Humfeld for hunting. It would make no sense to hold that Marsh was immune from liability for the entire five-to-six-year period preceding Humfeld's injury, during which Humfeld was indisputably a permissive entrant on Marsh's property, but that Marsh was not immune for the single day when Humfeld was injured, simply because Marsh also happened to extend Humfeld a specific invitation to hunt on his property that day.
¶ 28 Ultimately, this is not a case where the only reason Humfeld went onto Marsh's property on the day of his injury was because of an express invitation from Marsh that was limited to a specific day. Rather, the undisputed facts show that Humfeld went onto Marsh's property regularly to hunt, pursuant to Marsh's general permission allowing him to do so anytime he wanted. Under these circumstances, the purpose of the social guest exception would not be served by abrogating Marsh's recreational immunity. We therefore hold, based upon the undisputed facts, that the social guest exception does not apply in this case.
II. The profit exception
¶ 29 Humfeld also argues there are disputed issues of fact as to whether the profit exception to recreational immunity is applicable here. Under that exception, a property owner is not entitled to recreational immunity if
[t]he private property owner collects money, goods or services in payment for the use of the owner's property for the recreational activity during which the death or injury occurs, and the aggregate value of all payments received by the owner for the use of the owner's property for recreational activities during the year in which the death or injury occurs exceeds $2,000.
WIS. STAT. § 895.52(6)(a).
¶ 30 In this case, it is undisputed that a creek bisects Marsh's property and that, at the time Humfeld was injured, Marsh leased the land east of the creek to certain individuals for hunting purposes in exchange for an annual payment of $3,000. It is also undisputed that Humfeld hunted only on the portion of Marsh's property located to the west of the creek, which Marsh did not lease to anyone, and that Humfeld's injury occurred on the non-leased portion of Marsh's property. Finally, it is undisputed that Marsh did not charge either Humfeld or Devine any fee in exchange for allowing them to hunt on his property.
¶ 31 We agree with the circuit court that the profit exception to recreational immunity is inapplicable on these facts. By its plain language, the profit exception applies when a property owner receives payment "for the use" of his or her property "for the recreational activity during which the death or injury occurs." WIS. STAT. § 895.52(6)(a). In this case, the undisputed facts show that Marsh did not receive any payments for the use of his property for the recreational activity during which Humfeld's injury occurred . He instead received payments from other individuals for their use of a separate and distinct portion of his property. The payments Marsh received were therefore insufficient to trigger application of the profit exception, under the plain language of § 895.52(6)(a).
¶ 32 The purpose of the profit exception further supports our conclusion in this regard. When the legislature enacted WIS. STAT. § 895.52, it expressly stated that its intent was to "limit the liability of property owners toward others who use their property for recreational activities under circumstances in which the owner does not derive more than a minimal pecuniary benefit." 1983 Wis. Act 418, § 1. In other words, the legislature intended "to accord immunity to gratuitous uses for recreational purposes and to find liability for profit-making uses." Douglas v. Dewey , 154 Wis. 2d 451, 462, 453 N.W.2d 500 (Ct. App. 1990). Here, it is undisputed that Humfeld's recreational use of Marsh's property was gratuitous and that Marsh did not derive any profit as a result of that use. Applying the profit exception in this case would therefore be inconsistent with the legislature's intent.
¶ 33 Citing Douglas , Humfeld argues the profit exception nevertheless applies because Marsh "benefited from 'indirect pecuniary benefits' from hunting activities on his property generally." We are not persuaded. In Douglas , the defendant (Dewey) owned a lakefront resort, which included a mobile home park, tavern, dock, and beach. Id. at 455-56. In June of 1984, Douglas-a guest of one of Dewey's mobile home tenants-was injured when she dove from the resort's dock into shallow water. Id. at 456. Dewey received $21,000 during 1984 from renting mobile home spaces at the resort, but he did not receive any additional payments in exchange for allowing tenants, their guests, or tavern customers to use the resort's beach. Id.
¶ 34 On these facts, Douglas argued the profit exception to recreational immunity applied because Dewey received "indirect pecuniary benefits ... from swimming activities" on his property-presumably the rental payments he received from his mobile home tenants. Id. at 459. Dewey responded that the profit exception was inapplicable because "he did not collect money, goods or services from Douglas for the use of [the lake] and [the resort's] dock for swimming." Id. On appeal, we agreed with Douglas that the profit exception applies regardless of whether the owner's profit "results from direct charges for the recreational activity, or indirectly, from a pecuniary benefit accruing to the owner from the recreational activity." Id. at 462. We therefore held that the "indirect pecuniary benefits which Dewey derived from swimming activities must be considered as payment for the use of Dewey's property." Id. at 459.
¶ 35 Douglas is materially distinguishable from this case. In Douglas , there was a connection-albeit an indirect one-between Douglas's recreational use of Dewey's property and the pecuniary benefit Dewey received from permitting that recreational use. Specifically, use of the beach at Dewey's resort was an amenity to which Dewey's tenants gained access as a result of renting mobile home spaces from Dewey, and Douglas was a guest of one of those tenants on the day she was injured. Douglas's recreational use of Dewey's property was therefore connected, albeit indirectly, to the rental payments Dewey received from Douglas's host. Here, in contrast, there is no connection whatsoever between Humfeld's recreational use of Marsh's property at the time of his injury and the rent that other individuals paid Marsh to use a different part of his property. Ultimately, there is no evidence in the record indicating that Marsh received any pecuniary benefit, whether direct or indirect, from Humfeld's use of his property. On these facts, the profit exception to recreational immunity is inapplicable.
CONCLUSION
¶ 36 For the reasons explained above, we conclude the undisputed facts establish that neither the social guest exception nor the profit exception to recreational immunity applies in this case. Absent those exceptions, it is undisputed that recreational immunity bars Humfeld's claims. We therefore affirm the circuit court's grant of summary judgment in favor of State Farm.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Humfeld was hunting for deer with a crossbow at the time of his injury, while Devine was using a gun to hunt squirrels. The men were hunting separately and were apparently unaware of one another's presence on the property.

Marsh died in June 2017. Humfeld ultimately filed an amended summons and complaint, adding Marsh's estate as a defendant. For the remainder of this opinion, we refer to State Farm and Marsh's estate, collectively, as "State Farm."

The applicability of the social guest exception is further limited to injuries that occur on three types of property: platted land; residential property; and property within 300 feet of a building or structure on land that is classified as commercial or manufacturing. See Wis. Stat. § 895.52(6)(d)1.-3. The parties do not address whether Marsh's property falls within any of the three categories listed in the statute. Nevertheless, because we conclude the social guest exception is otherwise inapplicable, we need not address this issue.

The court of appeals "can affirm a summary judgment on different grounds than those relied on by the [circuit] court." International Flavors & Fragrances, Inc. v. Valley Forge Ins. Co. , 2007 WI App 187, ¶ 23, 304 Wis. 2d 732, 738 N.W.2d 159.